RALPH HOCHSTETTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76160. Promulgated July 14, 1936.

*John L. Kenefick, Esq., Ralph M. Andrews, Esq.,* and *John W. Sanborn, Esq.,* for the petitioner.

*R. H. Transue, Esq.,* and *Harold Allen, Esq.,* for the respondent.

OPINION.

BLACK: Petitioner complains of an income tax deficiency of $66,203.09 for the calendar year 1931. Instead of the deficiency, he

claims an overpayment of $7,980. Three errors are assigned as follows:

(a) In determining the taxable net income of the petitioner for the year 1931 the Commissioner erroneously disallowed a deduction of $145,562.50 representing loss from sale of securities.

(b) The Commissioner has erroneously disallowed a deduction of capital net loss in the amount of $54,975.

(c) The Commissioner has erroneously increased the petitioner's net income in the amount of $150,909.75 representing dividends claimed by the Commissioner to have been received by the petitioner.

All the facts have been stipulated, which makes separate findings of fact unnecessary. A brief statement of such facts relative to the first two assignments of error follows.

Petitioner is an individual and a resident of Buffalo, New York. During 1918 he and others caused the Cliff Petroleum Co. to be incorporated under the laws of Delaware. The purpose of this corporation was mainly to engage in the oil business. It immediately acquired extensive oil properties. By 1926 its authorized capital stock had been duly increased to 50,000 no par shares, of which petitioner owned 49,900. During June 1926 the Cliff Petroleum Co. duly sold all of its oil properties to the Texas Co. for $1,642,915.05 in cash and invested the proceeds in corporate securities.

During 1929, but prior to December 17, petitioner purchased certain shares of common stock of three corporations, as follows:

| | |
|---|---|
| 250 shares General Capital Corporation | $18,750.00 |
| 500 shares Air Reduction Co | 47,975.00 |
| 500 shares American Can Co | 51,187.50 |

During 1930 and 1931, but prior to December 17, 1931, petitioner purchased certain shares of common stock of two corporations, as follows:

| | |
|---|---|
| 10,400 shares McLellan Stores Co | $119,512.50 |
| 1,000 shares National Biscuit Co | 86,450.00 |

On December 17, 1931, petitioner duly assigned, transferred, and delivered to the Cliff Petroleum Co. certain shares of common stock of five corporations in consideration of the transferee crediting petitioner's indebtedness to it, which was then in excess of $123,337.50, in amounts as follows:

| Name of corporation | Number of shares | Agreed value | |
|---|---|---|---|
| | | Per share | Total |
| General Capital Corporation | 250 | $35 | $8,750.00 |
| Air Reduction Co | 500 | 49 | 24,500.00 |
| American Can Co | 500 | 59⅜ | 29,687.50 |
| McLellan Stores Co | 10,400 | 2¼ | 23,400.00 |
| National Biscuit Co | 1,000 | 37 | 37,000.00 |
| Total | | | 123,337.50 |

In determining the prices for which the above securities were transferred to the Cliff Petroleum Co., the above per share quotations on current market sales were obtained from a Buffalo broker by an employee of the Cliff Petroleum Co.

Immediately upon delivery of the above securities to it, the Cliff Petroleum Co. debited its "Stocks and Bonds" investment account with a total of $123,337.50 and credited "Ralph Hochstetter" with a like amount and explained the entry as follows: "Purchased above stocks this day." At the same time petitioner entered upon his journal an entry summarized as follows:

|  | Debits | Credits |
|---|---|---|
| Cliff Petroleum Company | $123,337.50 | |
| Stocks and Bonds Profit and Loss | 200,537.50 | |
| Stocks and Bonds Investment Acct | | $323,875.00 |

To record Sale of following Stocks:

[Here is set out a list of the stocks sold corresponding to the list given above.]

In connection with the transfer of the said securities petitioner executed and delivered to the Cliff Petroleum Co. a bill of sale to which were attached canceled stamps showing that petitioner had paid $455 in Federal and state stock transfer taxes.

Petitioner did not at any time reacquire any of the securities transferred by him on December 17, 1931, to the Cliff Petroleum Co., nor did he acquire any substantially identical stock or securities on that date or within 30 days before or after that date, nor did petitioner have on that date a contract or option to acquire any substantially identical stock or securities.

During 1934 the Cliff Petroleum Co. sold to purchasers unknown the 10,400 shares of McLellan Stores Co. for $99,326.85 and also the 1,000 shares of National Biscuit Co. for $28,427.92, and deposited the proceeds in its bank account. It still owns the 250 shares of General Capital Corporation, the 500 shares of Air Reduction Co., and the 500 shares of American Can Co.

All dividends paid after December 17, 1931, on the stocks in question while owned by the Cliff Petroleum Co. were received by and reported by that company in its income tax returns.

In filing his income tax return for the year 1931 petitioner deducted $145,562.50 from his gross income as ordinary losses from the sale of stocks, and 12½ percent of $54,975 from the tax on his net income, the $54,975 representing capital net losses from the sale of stocks, that is, from stocks which petitioner had held for more than two years. There is no controversy between the parties as to the amounts and character of the losses if the Board sustains petitioner's contention that the stipulated facts show a real bona fide sale.

In disallowing both the ordinary and capital net losses the respondent, in a statement attached to the deficiency notice, said in part:

Losses from sales of securities held for less than two years and for more than two years have been disallowed in the amounts of $145,562.50 and $54,975.00, respectively. The losses have been disallowed for the reason that the sales of the securities were made to Cliff Petroleum Corporation of which you owned 98% of the stock. It is held that the sales were not bona fide for income tax purposes, * * * It is obvious that you did not part with control of the securities in question upon their sale. For all practical purposes you were just as effectively in control of them after they were purchased by the Cliff Petroleum Corporation as when you owned them individually.

The facts relative to the third assignment of error were stipulated as follows:

27. The petitioner in his return for the year 1931 (Exhibit "E") reported dividends from domestic corporations of $291,190.18. The respondent in his final determination (Petition, Exhibit "A") which is incorporated in this stipulation by reference, has increased the amount of dividends from domestic corporations to $442,099.93.

28. Of the amount of $442,099.93 stated in the deficiency notice as being the amount of dividends received by petitioner, $441,349.93 constitutes the amount of dividends reported on Forms 1099 by various payer corporations as having been paid to petitioner as record holder of their stocks.

29. Petitioner at no time prior to the filing of this appeal reported his ownership of said stocks as nominee for Cliff Petroleum Company by filing Forms 1087. Said Forms 1087, however, were filed by petitioner on January, 1935, with the Commissioner of Internal Revenue, Sorting Section, Washington, D. C.

30. It is now stipulated and agreed by the parties hereto that petitioner, individually and for his own account, received dividends from domestic corporations of $251,290.18 instead of $291,190.18, as reported by petitioner in his return, and instead of $442,099.93, as determined by respondent. It is further stipulated that the balance of dividends, aggregating $190,809.75 reported to respondent on Forms 1099 as having been received by petitioner, were received by petitioner as nominee for Cliff Petroleum Company and others. Cliff Petroleum and said others reported said dividends received by petitioner as their nominee, in their returns for the calendar year 1931.

Petitioner argues that a loss resulting from a sale otherwise bona fide is not nondeductible merely because the sale is to a closely held or even a solely owned corporation, and in support thereof relies principally upon *A. S. Eldridge*, 30 B. T. A. 1322; affd. (C. C. A., 9th Cir.), 79 Fed. (2d) 629. The respondent contends that the determination of the deductibility of the losses in question is governed by *Sydney M. Shoenberg*, 30 B. T. A. 659; affd. (C. C. A., 8th Cir.), 77 Fed. (2d) 446; certiorari denied, 296 U. S. 586.

In the *Eldridge* case, Eldridge owned all the stock except qualifying shares of the Eldridge Buick Co., a corporation engaged in distributing and retailing automobiles. During October 1929 he purchased 2,000 shares of stock in two corporations for $68,104. The market immediately declined and two months later he transferred

the 2,000 shares to the Eldridge Buick Co. in consideration for a credit to his account with that corporation of $35,000, which amount was the then market price of the securities so transferred. Eldridge and his wife filed returns on a community property basis, each claiming a loss of $16,552, which was one-half of the difference between the cost of $68,104 and the credit of $35,000. The Commissioner disallowed the losses; the Board allowed them; and in affirming the Board the Circuit Court said in part:

Having found the facts as above set forth, the Board held that the corporation was an entity separate and distinct from respondents, and that the transfers by respondents to the corporation resulted in a deductible loss, one-half of which ($16,552) was properly allowed to each respondent. The correctness of this holding is challenged by the Commissioner, his contention being that the separate entity of the corporation should be disregarded, and the corporation and its stockholders treated as one.

This is sometimes done in tax cases [Citations], but only when warranted by exceptional circumstances. Generally, in tax cases, as in other cases, a corporation and its stockholders are to be treated as separate entities. [Citations.]

The facts found by the Board of Tax Appeals in this case do not, in our opinion, warrant us in disregarding the separate entity of the corporation. The fact that respondents owned all its stock and were in complete control of it is no reason for disregarding its separate entity. [Citations.]

It is argued by the Commissioner that the transfers by respondents to the corporation were made for the purpose of establishing a deductible loss for income tax purposes. This, if true, is unimportant. A taxpayer may resort to any legal method available to him to diminish the amount of his tax liability. [Citations.]

In the *Shoenberg* case, Shoenberg owned 70 percent of the stock of the Globe Investment Co., the remaining 30 percent being owned by his widowed mother, an aged woman in poor health. In December 1930 Shoenberg, desiring to establish a loss on certain stocks owned by him for the purpose of reducing his income taxes, instructed his broker to sell the stocks at market (which was about $310,000) and at the same time to buy the same amount of the same stocks at the market for the account of the Globe Investment Co. At the same time he transferred to the Globe Investment Co. approximately $120,000. The sales and purchases were made as ordered. About 31 days thereafter Shoenberg, acting under a blanket grant of authority from the Globe Investment Co., caused that corporation to transfer to himself, as an individual, all of the shares in controversy at the then market price, for which Shoenberg issued his checks for a total of $304,593.87. New certificates were issued to the Globe Investment Co. for the shares it purchased, but in the transaction about 31 days later no new certificates were issued. Shoenberg claimed a loss of $191,886.30, which the Commissioner and this Board disallowed. In affirming the Board the Circuit Court said that the

matter should be viewed in its entirety; that for all practical purposes Shoenberg had used the Globe Investment Co. merely as an agency for purchasing, holding, and reselling to him stocks identical with those he had sold to establish the claimed loss.

It is our opinion that the facts in the instant proceeding closely resemble those in the *Eldridge* case and are clearly distinguishable from those in the *Shoenberg* case in that a plan for the reacquisition by petitioner of identical stocks is wholly lacking in the instant proceedings. The Cliff Petroleum Co. was a going corporation of long standing and not a corporation organized solely to reduce the income taxes of its incorporators. It was an entity separate and apart from petitioner. There are no exceptional circumstances present that would, in our opinion, warrant a disregard of the two taxable entities. The transaction between petitioner and the Cliff Petroleum Co. on December 17, 1931, was legal in every respect. From the stipulated facts there is no reason to question its bona fides. The sale by petitioner to the corporation was at the current market price. None of the stocks thus sold were ever reacquired by petitioner. From the facts which have been stipulated, we find as a fact that the sale by petitioner to the Cliff Petroleum Co. on December 17, 1931, was a bona fide sale. We therefore sustain the petitioner in his first two assignments of error. Cf. *Edward Securities Corporation*, 30 B. T. A. 918; affirmed by the Circuit Court of Appeals for the Seventh Circuit without opinion, 83 Fed. (2d) 1007; *Marston* v. *Commissioner*, 75 Fed. (2d) 936; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; *Ewing Hill* v. *United States*, 12 Fed. Supp. 798; *Commissioner* v. *Neaves*, 81 Fed. (2d) 947; *United States* v. *Huntington Laboratories, Inc.*, 82 Fed. (2d) 356; *Commissioner* v. *McCreery*, 83 Fed. (2d) 817.

The question involved in the last assignment of error is whether petitioner is taxable on dividends of $251,290.18 or $442,099.93. In his return petitioner reported $291,190.18 as taxable dividends. He later filed a claim for refund on the ground that he should have reported as taxable dividends only the amount of $251,290.18. The parties have stipulated that petitioner received for his own account only dividends from domestic corporations in the amount of $251,290.18 instead of $291,190.18 as reported by petitioner in his return and instead of $442,099.93 as determined by the respondent in his deficiency notice. The parties have also stipulated that in addition to the $251,290.18, petitioner also received dividends from domestic corporations of $190,809.75 as nominee for the Cliff Petroleum Co. and others. The respondent determined and still contends that petitioner is also taxable on this $190,809.75 on the ground that petitioner did not upon receipt of such dividends immediately execute

form 1087 and disclose to the Commissioner the name and address of the actual owners thereof, as required by article 818 of Regulations 74, the material part of which is as follows:

ART. 818. *Information as to actual owner.*—When the person receiving a payment falling within the provisions of the Act for information at the source is not the actual owner of the income received, the name and address of the actual owner shall be furnished upon demand of the individual, corporation, or partnership paying the income, and in default of a compliance with such demand the payee becomes liable to the penalties provided. (See section 146.) Dividends on stock are prima facie the income of the record owner of the stock. Upon receipt of dividends by a record owner, he should immediately execute Form 1087 to disclose the name and address of the actual owner. Form 1087 should be filed with the Commissioner of Internal Revenue, Sorting Section, Washington, D. C. Unless such a disclosure is made, the record owner will be held liable for any tax based upon such dividends.

Petitioner did, however, execute form 1087 during January 1935, and it is stipulated that the "Cliff Petroleum and said others reported said dividends received by petitioner as their nominee, in their returns for the calendar year 1931."

Paul and Mertens, in their "Law of Federal Income Taxation", vol. 1, par. 8.117, discuss the above quoted regulation under the title of "Taxability of Unidentified Dividends Received by Stock Brokers." While the quoted regulation undoubtedly has a broader application than merely to stock brokers, we think the comment of Paul and Mertens on the regulation in question is pertinent here. Among other things they say:

The regulations provide that dividends on stocks are *prima facie* the income of the record owner of the stock. However despite the failure to have the transfer recorded on the corporate records, the transferee is the true owner of the stock and dividends declared thereon. It has been ruled that such dividends (prior to the running of the state statute of limitations in favor of the broker) are not properly taxable as income of the broker. Since the broker has actual possession of the dividends, he is required to make a full disclosure of the names of the actual owners in the next information return if and when the identity of such owners is discovered. Prior to the discovery of identity the broker is required to execute form 1087 setting forth the fact that he holds such dividends for parties of identity unknown as the result of reasonable search and inquiry. He should furnish the reason for his inability to establish the identity and state the efforts he has made to do so. When the actual ownership is not disclosed prior to the running of the State statute of limitations upon the right of the actual owner to demand payment of dividends, the broker will be in receipt of taxable income to the extent of the dividends held.

The purpose of the cited regulation is to provide a means by which the Commissioner will be advised of the true owner of income in ample time prior to the running of the statute of limitations to permit him to determine and assess the correct amount of tax against the true owner of the income. This purpose is accomplished when,

as in the instant proceeding, the true owner has himself duly reported the income received by the nominee for the taxable year during which it was so received. The instant proceeding is not a case where the nominee has entirely failed to file the required form 1087. Nor is this a case where although having filed the required form it was so delinquent that the Commissioner's rights were jeopardized thereby. What our decision would be in the event of either of such situations we need not now decide. Suffice it to say that in the instant proceeding the Commissioner has not been prejudiced in any way by the failure of petitioner to file form 1087 prior to January 1935. That being true we think the Commissioner is without statutory or constitutional authority to include in petitioner's taxable income dividends properly taxable to and reported by another. We hold, therefore, that petitioner is taxable on dividends of $251,290.18 instead of $442,099.93 as determined by the respondent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*