Lucien Jouvaud v. Commissioner. Castlewest Corporation v. Commissioner.
Jouvaud v. Commissioner
Docket Nos. 107933, 107934.
United States Tax Court
1942 Tax Ct. Memo LEXIS 14; 1 T.C.M. (CCH) 287; T.C.M. (RIA) 42683; 12/23/1942
*14 Arnon W. Welch, Esq., 30 Rockefeller Plaza, New York City, for the petitioner. John W. Fisher, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings, duly consolidated, involve deficiencies in income and excess profits taxes determined by the Commissioner as follows: Docket No.
Taxable Year
Income Tax
Excess Profits Tax
Total
107933
1936
$ 331.50
$ 331.50
107934
Ended 6/30/37
18,763.02
$4,482.06
23,245.08
Both petitioners claim overpayments for the taxable years: in Docket No. 107933, in income tax in the amount of $313.78; and in Docket No. 107934, in income and excess profits taxes in the aggregate amount of $7,154.71. The principal issue affecting decision in both proceedings is whether certain profits realized from sales of real estate are taxable to Castlewest Corporation. Also presented are the questions whether, and in what amount, the corporation or Jouvaud is entitled to a deduction for real estate taxes; and whether Jouvaud is entitled to deduct interest paid on mortgages covering the real estate. If profits from the sales be held taxable to the corporation, the following further issues arise *15 in Docket No. 107934: whether petitioner is entitled to deductions claimed for officer's salary, commissions paid and attorneys' fees; and whether the Commissioner erred in denying to petitioner a dividends paid credit and a deduction for excess profits tax accrued for the taxable year. If the profits from the sales are not taxable to Castlewest Corporation, the Commissioner alleges them to be taxable to Jouvaud, and, by an amendment to answer filed at the hearing, claims an increased deficiency in Docket No. 107933. Petitioner's reply alleges that if we hold such profits not taxable to Castlewest Corporation, they are taxable to him under the provisions of section 117 of the Revenue Act of 1936. The parties have filed a stipulation of facts which we adopt and incorporate herein by reference. Such parts thereof as are necessary to an understanding of the issues are included in our findings of fact made from evidence submitted at the hearing. Findings of Fact Lucien Jouvaud is an individual residing in Westport, Connecticut, and having an office in New York City. He filed his income tax return for the year 1936 with the collector of internal revenue for the third district of New *16 York. Castlewest Corporation was incorporated under the laws of the State of New York on July 7, 1926, and was dissolved on March 17, 1941. It filed its income and excess profits tax return for the year ended June 30, 1937, with the collector of internal revenue for the fourteenth district of New York. During the years 1916, 1919 and 1920, petitioner Jouvaud purchased and paid for ten parcels of land, containing an aggregate of about 230 acres, in the vicinity of Westport, Connecticut, and five parcels of land containing an aggregate of about 320 acres, in Westchester County, New York. The land so acquired was farm land, although none of it was farmed after Jouvaud purchased it. A house and some old farm buildings stood on the Connecticut property, and Jouvaud subsequently erected two cottages on it. He erected a house, stable and barn on the New York property. In 1922, Jouvaud executed a mortgage for $20,000, and in 1926 a mortgage for $10,000, both covering parts of the New York land. Believing that, in the event of his death, the settlement of his estate would be facilitated if his holdings in the two states were transferred to a single corporation, Jouvaud procured the organization *17 of Castlewest Corporation, and, by deeds dated July 1 and attested July 19, 1926, conveyed to it all of the Connecticut and New York property. In exchange, the corporation issued its total authorized capital stock, consisting of 1,000 shares of the par value of $100 each, to three persons, nominees of Jouvaud, none of whom paid any consideration for his shares. These nominees indorsed their shares in blank and delivered them to Jouvaud who subsequently surrendered them and received a new certificate for 1,000 shares in his own name. Jouvaud was elected to the office of treasurer and to membership on the board of directors of Castlewest at the time of its incorporation, and continued to hold those offices during all the period of its existence. After May 1932, when Gertrude Davis and Blanche Paladini, Jouvaud's sister, were elected to membership, those three continued as the only directors. Mrs. Paladini was elected to the office of president at the same time, and retained that office until the corporation was dissolved. Although the purposes for which the corporation was formed were broadly stated in its charter, and included the acquisition and disposal of stocks, bonds, or other *18 evidence of indebtedness of any corporation, and the construction, operation or management of any building, store, office, warehouse, mill, factory, plant or other structure, it in fact never acquired any property other than that conveyed to it by Jouvaud. Nor did it exercise any of the other powers mentioned in its charter, except in connection with that property. It had a mailing address at the office of Roger Sherman, an attorney, at Rye, New York, but had never paid any rent nor leased any space in its own name. It had no stationery, no books of account nor records, other than a minute book, and maintained no bank account. It had no employees, and, except for the salary payment here in issue, paid no compensation to any of its officers. Such business as it had was transacted for it at Sherman's law office. It consisted principally of sales of real estate, the execution of real estate mortgages, attendance to payment of state franchise taxes, and the preparation of its income tax returns. Money for the payment of franchise taxes was furnished by Jouvaud, personally. In its income tax return for the first year of its incorporation, it reported rents received in the amount of $150 *19 as its gross income, and total deductions in excess of $1,400 for taxes paid. On all of its subsequent returns, except on that filed for the year here in issue, it reported no income. During the years 1932 to 1936, inclusive, rents from the cottages erected on the Connecticut property were received and used by Jouvaud personally. In 1936 such rents totaled $240. The property on which the cottages were situated was sold in 1936 and consequently produced no income thereafter. In subsequent years, however, Jouvaud continued to receive and use rents from other property owned by the corporation. He always made personal use of part of the Connecticut property, as a summer home until 1931, and thereafter as a residence for himself and his sister. Property and school taxes assessed against the corporation were paid by Jouvaud personally, or by Mrs. Paladini with funds furnished by him. In the year 1936 such payments aggregated $4,657.05, and in the period from January to June 30, 1937, Mrs. Paladini paid an additional $400.07. The corporation executed mortgages covering portions of the New York property in 1928 and 1931 in the respective amounts of $60,000 and $10,000. Part of the proceeds *20 of the former were used to retire two mortgages made by Jouvaud prior to the transfer to the corporation, and the balance was used by Jouvaud personally in a manufacturing business in which he was interested, as were the entire proceeds of the $10,000 mortgage. In 1929 Castlewest executed a mortgage In 1929 Castlewest executed a mortgage on the Connecticut lands for $100,000, which entire amount was used by Jouvaud in his manufacturing business. He subsequently paid, personally, $15,000 in reduction of the principal indebtedness, the balance of which was satisfied by the application of the proceeds of a new mortgage for $85,000 given by the corporation in 1930. Jouvaud or Mrs. Paladini, with funds supplied by Jouvaud, paid the interest on all of Castlewest's mortgages. During the year 1936, such payments aggregated $4,931.16, and in the period from January 1, 1937, to June 30, 1937, Mrs. Paladini paid an additional $614.92. Neither Jouvaud nor his sister kept any record or account of these or other payments made by them on behalf of the corporation, other than their canceled checks and stubs, and the receipted bills. On October 30, 1936, certain parcels of the Connecticut land were *21 sold to the State of Connecticut for $75,000 cash. Of the proceeds of the sale, $60,000 was applied in reduction of the principal indebtedness due on the existing $85,000 mortgage, and the balance of $15,000 was deposited in the bank account of Mrs. Paladini. In November 1936 part of the New York land was sold to James F. Sullivan for $4,750 cash, and the entire proceeds were deposited in the bank account of Lucien Jouvaud. The cost of all the property so sold by the corporation in October and November 1936 was $10,656.43. Sale of another part of the New York property was made in April 1937 to Robert A. Kelly. It had cost $500 and was sold for $3,600 cash, the entire proceeds being deposited in Jouvaud's personal bank account. Expenses in connection with the sales were paid by Jouvaud and by Mrs. Paladini as follows: Sale
Jouvaud
Paladini
Connecticut
$641.25 legal services $ 353.20 legal services and disbursements
and disbursements
3,750.00 agent's commissions
Sullivan 100.00 legal services None 237.50 agent's commissions
Kelly 180.00 agent's commissions
None Payments in connection with the Connecticut and Sullivan sales were *22 all made in 1936. That in connection with the Kelly sale was made in April 1937. During the year ending June 30, 1937, interest on the $85,000 mortgage was paid in the total amount of $3,208.58. No further sales were ever made. The corporation executed one additional mortgage in August 1940, covering property in Connecticut, the proceeds of which were used in part to satisfy the balance of its existing mortgage indebtedness, and were in part retained to meet early amortization and interest payments to become due on the new mortgage. Upon dissolution in 1941 all property in the name of the corporation was conveyed to Jouvaud in complete liquidation. The corporation's income and excess profits tax return filed for the taxable year in issue was thereon stated to have been made on the cash basis. The corporation was on a cash basis. The declared value for excess profits tax shown thereon in the amount of $3,431.17 was deducted from excess profits tax net income in the computation of normal tax net income. Total normal tax was shown to be $3,723.54, which amount together with the excess profits tax shown was paid. A dividends paid credit was claimed in the amount of $27,688.34, being *23 the entire amount of adjusted net income, leaving no remainder subject to surtax. By an amended return filed December 8, 1939, its return was stated to have been made on the accrual basis. Also on December 8, 1939, it filed claim for refund of $7,154.71, the aggregate of the income and excess profits taxes paid, on the ground that the corporation was "a mere dummy corporation and conduit of title, and has no taxable entity apart from its sole stockholder and treasurer, Lucien Jouvaud." The claim has not been allowed or disallowed. The respondent has added to net income reported by the corporation the sum of $13,989.98 as profit on real estate sales, has disallowed deductions of $15,000 claimed as compensation of Jouvaud, $5,261.95 for legal expenses and commissions in connection with the real estate sales, and $3,089.59 for taxes. He has further denied petitioner's claimed deduction for excess profits taxes accrued in the taxable year and its claim of a dividends paid credit. Jouvaud's income tax return for 1936 reported a net loss of $2,085. On an amended return, filed September 10, 1937, he added to taxable income $15,000 for salary received from Castlewest Corporation, and showed *24 tax liability of $1,197.90, which amount, with interest thereon, was paid. On December 8, 1939, he filed a claim for refund in the amount of $313.78 which claim has not been allowed or disallowed. The respondent has added to net income reported by petitioner Jouvaud in his original return the sum of $11,972.66 for salary received from Castlewest Corporation, and has disallowed deductions of $4,931.16 for interest paid and $5,178.64 for taxes paid. Credit for the tax assessed under the amended return has been allowed in determining the deficiency in issue. Opinion The first and prime question for disposition here is whether the corporate entity of the Castlewest Corporation is to be disregarded. The petitioner recognizes the general rule that a corporation and its stockholders are separate entities for tax purposes, but seeks to show that we have here an exception to the rule. That there are exceptions to the rule is well demonstrated by the cases cited by the petitioner; but whether an exception appears is, of course, dependent upon the facts involved. The record here contains many facts varied in character and importance. They have been examined and weighed and we think it is *25 not necessary to set them forth here. Upon consideration of the cases relied upon as showing instances where the general rule should not be followed, and comparison with the facts involved in this case, we have come to the conclusion that such an exception is not here established. The relationship here disclosed is not merely that of trustee, as involved in some of the cases where the exception to the general rule has been recognized; nor can it be said that the corporation was passive, as in others. It filed reports, executed mortgages, and sold property. Its principal shareholder claimed a salary for services rendered. Rather this is, in our opinion, a fair example emphasizing the soundness of the general rule, along the lines of the decision in Commissioner v. Moline Properties, Inc., 131 Fed. (2d) 388 (C.C.A., 5th Cir., November 7, 1942). There the court, quoting from Banckner v. Commissioner, 76 Fed. (2d) 1, said that: In tax matters "tendency is not to ignore the corporate entity unless it be used to defraud the law, but rather, when natural persons are using corporate forms to do their business, they and their *26 corporations are held to the literal consequences." Petitioner Jouvaud in this matter did essentially what the court in the Moline Properties, Inc. case referred to when it said: * * * Having chosen the corporate form to conduct these affairs, both Thompson and his corporation must accept the tax disadvantages of the plan; and they may not now, in order to escape corporate taxes, be heard to disavow the corporate existence and allege that the respondent was merely a "dummy" corporation. Higgins v. Smith, 308 U.S. 473, 477 [84 L. Ed. 406, 60 S. Ct. 355, 23 AFTR 800]; Interstate Transit Lines v. Commissioner, 130 Fed. (2d 136 [par. 62901]. In Salmon v. Commissioner, 126 Fed. (2d) 203, we find a situation where as here a sole shareholder in a corporation sought disregard of the corporate entity. The court said: * * * A taxpayer, having chosen a corporate form in which to do his business, will not be allowed to disavow it so as to assert that payments made by him, which would be deductible if he were operating the business, are his and not the corporation's. So far *27 as Salmon's payments were in performance of his guarantees of the rent, or interest upon the bonds, we will assume that he could be subrogated to the claims - at least to the extent of his half - but he has not suggested that they were "worthless debts" and deductible as such. * * * We do not think that the case of Archibald R. Watson, 42 B.T.A. 52, relied upon by petitioner suffices to overcome the above-quoted language herein. There corporations appear never to have realized any income and never to have transacted business, and they performed no function, save that of holding title. The petitioner had consistently disregarded the separate entities of the corporations. We find no such consistency here. The corporation here issued its stock for the property, mortgaged it, and sold it. Petitioner Jouvaud reported as income a salary received from the corporation. We think that it may fairly and truly be said, and we hold, that the sole shareholder here having chosen to transact business through the corporate form, can not disregard it. We recognize the corporate entity of Castlewest Corporation. It follows, and we hold, that deductions for taxes and *28 mortgage interest paid should be allowed to the corporation. This leaves for consideration the question of certain salary, commissions, attorneys' fees, taxes, excess profits taxes, and dividends paid credit alleged in the alternative in case we recognize the corporate entity. With respect to the salary: The contention is made that $15,000 reported by petitioner Jouvaud should be allowed in full. The respondent concedes allowance of $11,736.66. The Castlewest Corporation was on the cash basis and out of its gross receipts from sale of land had only that amount remaining after deduction of other expenses, including interest, and the payment of the mortgage upon the land. We approve the allowance of the salary to the extent of $11,736.66. The same amount is approved as income, from salary paid, to petitioner Jouvaud during 1936. Also, with reference to deduction for real estate taxes, the respondent concedes upon brief that the Castlewest Corporation is entitled to a deduction of $3,142.81, the amount claimed by the petitioner. Likewise, there is no difference between the petitioner and the respondent on the question of commissions and attorneys' fees, since the petitioner contends *29 and the respondent agrees that such commissions and attorneys' fees in the respective amounts of $4,167.50 and $1,094.45 may be deducted from the selling price of the real estate in connection with which they were earned. Petitioner Castlewest Corporation seeks deduction for excess profits taxes. Since the corporation was upon the cash basis and such taxes were not paid during the corporation's taxable year, the claim is denied. We deny also the claim for dividends paid credit for the reason that after payment from the receipts from the sale of land, the funds available for dividends, of the mortgage and interest thereon, and the items of commissions, legal expense and taxes hereinabove allowed, nothing remained from which a dividend could have been paid. No dividend was, in fact, paid. Payment was merely made of a mortgage upon property owned. Decision will be entered under Rule 50.