## RARITAN CO. OF DELAWARE, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8266.

Circuit Court of Appeals, Third Circuit.

Argued May 5, 1943.

Decided June 7, 1943.

James Craig Peacock, of Washington, D. C. (Paul F. Myers, of Washington, D. C., and Kenneth Perry, of New Brunswick, N. J., on the brief), for petitioner.

Mary Helen Wigle, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Samuel H. Levy, and William A. Clineburg, Sp. Assts. to the Atty. Gen., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

In 1927 J. Seward Johnson borrowed $541,710 from the Chase National Bank to purchase from his uncle 1,667 shares of common stock of Johnson & Johnson, a manufacturer of medical, surgical and hospital supplies. In 1932, no reduction in the loan having been made, a plan was formulated whereby the dividends paid by Johnson & Johnson could be made available to liquidate the loan. About March 31, 1932, the petitioner herein was incorporated under the laws of Delaware and issued its entire capital stock to J. Seward Johnson in return for 30,000 shares of Johnson & Johnson common. Then the Raritan Company, Limited, was organized under the laws of Newfoundland and it issued all but three of its shares to petitioner for the 30,000 shares of Johnson & Johnson stock. It was found as a fact that the plan called for the organization of these two corporations on the theory that if one held the stock of the other the latter would not be subject to any tax under § 104 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 375, or corresponding provisions of subsequent acts.

The Newfoundland corporation then purchased from J. Seward Johnson the shares he had obtained from his uncle and the stock dividends he had received thereon, for $541,710. This money it borrowed from the Chase National Bank to whom it gave an interest-bearing note dated May 19, 1932, which was at all times secured by collateral. Johnson used the money he received to pay the bank his original loan. On December 11, 1936, the Newfoundland corporation owed the bank $230,000 on its loan.

In December of 1936, this corporation was completely liquidated and dissolved in accordance with § 112(b) (6) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 856, and with the prior consent of the Commissioner of Internal Revenue as required by § 112 (i) of the same Act. All of its assets, except the three qualify-

ing shares, were transferred to petitioner, subject to the remaining indebtedness on the note at the Chase National Bank. Petitioner paid $25,000 on the note of the Newfoundland corporation in 1937, $1,500 in 1938, and the balance in 1939.

The one question in this litigation is this: was the $25,000 thus paid by petitioner deductible in computing its undistributed adjusted net income for the purpose of personal holding company's surtax, as an amount "used * * * to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, * * *" under § 355(b) of the Revenue Act of 1936, as amended?[1] The Commissioner denied the deduction. The Board of Tax Appeals sustained him. We agree with both.

The taxpayer relies mainly upon two recent decisions of this Court applying the section under consideration, now supported by one to the same effect by the Second Circuit. Commissioner of Internal Revenue v. Sun Pipe Line Co., 3 Cir., 1942, 126 F.2d 888; B. D. Phillips, Inc. v. Commissioner of Internal Revenue, 3 Cir., 1943, 134 F.2d 73; Commissioner of Internal Revenue v. Grant Trading Co., Inc., 2 Cir., 1943, 135 F.2d 358. In the first two decisions just cited, this Court held that a debtor, who had incurred an obligation prior to January 1, 1934, was entitled to deduction for payments made thereon even though the legal identity of the creditor had changed in the meantime. In both, we emphasized the continuity of the debtor's obligation.

■ Now the taxpayer invites us to apply the same ruling to the other end of the debtor-creditor relation, and to say that if the creditor has had a claim from a date prior to January 1, 1934, a debtor (of the type covered by the statute) may have a deduction for payments made on the claim, even though he became obligated after the statutory date and, in this case, though he made no promise to the principal creditor whose rights against taxpayer are only those of a creditor-beneficiary. This invitation we must decline. The taxpayer is obviously not within the language of the statute unless the phrase "indebtedness of any kind incurred" is to be applied broadly to anyone who, after the statutory date assumes to pay what someone else has earlier promised to pay. This would be a startling construction for an exemption statute. Nor would it be consistent with the purpose of the statute as applied and explained by us in the decisions cited above. The taxpayer in 1934 did not owe the debt for the payment of which it now seeks deduction for 1937. The statutory exemption does not apply to it.

■ The taxpayer's further argument would disregard the separate corporate existence of itself and its subsidiary, the Newfoundland corporation. The taxpayer would then be considered as having held prior to 1934 the equity in the collateral securing the indebtedness in question, and thus be the real obligor of the indebtedness. It cites §§ 112(b) (6) and 113(a) (15) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, pages 856, 864, and a number of cases which, for certain purposes of the Revenue Acts, tend to disregard the separate identity of parent and subsidiary corporations. However, they do not give petitioner license to do likewise in this case. The subsidiary, as well as the taxpayer, were organized by the persons interested for such purposes and for such reasons as seemed good to them. The purpose of the double corporate organization was to secure a tax advantage. This does not make it a violation of law or morals. But the form of business organization having been chosen, it must be taken for worse as well as for better so far as tax liability is concerned. Cf. Higgins v. Smith, 1940, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406.

The decision of the Board of Tax Appeals is affirmed.

---

[1] 26 U.S.C.A. Int.Rev.Acts, page 941, as amended by § 1 of the Revenue Act of 1937, Id. at page 976.