EDGAR M. SORENG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY SORENG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3916, 3917. Promulgated February 28, 1945.

---

\*     \*     \*     \*     \*     \*     \*

"(a) EXPENSES.—

\*     \*     \*     \*     \*     \*     \*

*L. M. McBride, Esq.*, for the petitioners.
*Harold H. Hart, Esq.*, for the respondent.

872

OPINION.

KERN, *Judge*: The sole question presented in this proceeding is whether the amounts of $8,804.75 and $3,557.75; or any part thereof,

received by petitioners from the Soreng-Manegold Co. on January 26, 1940, were dividends as defined by section 115 (a) of the Internal Revenue Code,[1] and therefore are taxable income to petitioners pursuant to section 22 (a).

Petitioners contend that the so-called dividends were paid to them by the Soreng-Manegold Co. only as an unavoidable legal step in its exercise of the option to purchase the Manegold and Hood stock, the company being prevented from making a lump sum payment of the option price by its lack of cash and the provisions of the Illinois Business Corporation Act; that petitioners had surrendered and waived all of their rights to the dividend before it was paid because of their understanding with Walter E. Heller & Co., by reason of which they returned to the Soreng-Manegold Co. the amount of the dividend the next day after it was paid to them; and that therefore the so-called dividend was not "a distribution made by a corporation to its shareholders * * * out of the earnings or profits of the taxable year * * *" and, as such, taxable income.

The respondent, on the other hand, points out that the distribution in question was not a liquidating dividend, since it was not paid by the corporation in complete cancellation or redemption of a pair of its common stock; that it was paid (at least to the extent of over 96%) out of earnings and profits for the taxable year; that it falls literally within the definition of a dividend given in section 115 (a) ; and that petitioners received it and were enriched thereby in that they came out of the transaction owning all the outstanding stock of the corporation. Furthermore, respondent contends, if the payment and receipt of the dividend distribution was intended by the corporation and petitioners to be merely a sham in order to circumvent the Illinois law, "the government may look at actualities and upon determination that the form employed for * * * carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purpose of the tax statute." (*Higgins* v. *Smith*, 308 U. S. 473).

Neither party has cited any cases directly in point, but both refer to cases involving the question of whether, under certain circumstances, a corporation is entitled to a dividend paid credit under section 27 (a) of the Revenue Act of 1936. *Royal Manufacturing Co.* v. *Com-*

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDENDS.—The term "dividends" when used in this chapter (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

*missioner*, 139 Fed. (2d) 958; *Pacific Grape Products Co.*, 42 B. T. A. 914.

In the latter case almost all of the stockholders, by agreement with the directors and other stockholders, endorsed their dividend checks back to the corporation before the date borne by the checks. In the first case the stockholders agreed that the corporation should have the power to endorse the dividend checks in their names and deposit them in the corporation's account, and this was done. In both cases it was held that the corporation was not entitled to a dividends paid credit because the dividend checks were never received by the stockholders or were endorsed back by them before the date fixed for the payment of the checks. Petitioners argue that those cases are analogous to the instant cases, and if the "dividends" in them were not considered as paid by the corporation, it would follow that in the instant cases they should not be considered as received by stockholders.

In the *Pacific Grape Products Co.* case, *supra*, a small percentage of the stockholders did not endorse their dividend checks back to the corporation until after the date upon which they became payable. For a short time they held the checks after the checks might have been paid, subject only to an understanding that they would be endorsed and returned to the corporation. As to these checks we held that the corporation was entitled to a dividends paid credit.

It would follow in the instant cases that the petitioners should be considered as having received the dividends in question.

The rule given in the *Royal Manufacturing Co.* case is that, in order for a dividend to be considered as having been paid, "the control of property distributed by way of a dividend must have passed absolutely and irrevocably from the distributing corporation to its stockholders." If, as in that case, the "dividend" checks are never delivered to the stockholders but are deposited by the corporation in its own bank account, it is obvious that the corporation has never parted with control over the property distributed by way of dividend. If the corporation actually delivers the dividend checks to the stockholders at a time when they may be cashed (see *Pacific Grape Products Co., supra*), but the stockholders are under obligation to the corporation or to each other as stockholders to return the checks or an amount equivalent to the corporation, our holding in *Pacific Grape Products Co.* would indicate that a dividend has thereby been paid, and the logical inference is that a dividend has been received by the stockholders. If, as in the instant cases, dividend checks are issued by the corporation to stockholders who deposit them in their own bank accounts and the only restriction upon the stockholders is an understanding, not with the corporation or with other stockholders, but with a creditor of the issuing corporation, that the amount of the dividend will be returned

to the corporation, we are of the opinion that a dividend has been both paid and received within the meaning of the revenue acts. Another fact which persuades us to this view in the instant cases is that the petitioners, at the time of the return by them of the amount distributed by way of dividend, were the owners of all the common stock of the corporation and had become the sole owners of this stock by reason of the transaction in question.

We decide the issue presented in favor of respondent.

*Decisions will be entered under Rule 50.*