JOHN R. MACMANUS, ET AL., TRUST, JOHN R. MACMANUS, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99781.   Promulgated May 16, 1941.

*J. J. Sloan, Esq.*, and *Godfrey Hammel, C. P. A.*, for the petitioner.
*Homer J. Fisher, Esq.*, for the respondent.

510

OPINION.

OPPER: The single petitioner contends that the income of the trust may properly be divided into four parts and taxed accordingly on one of two alternative theories.   It does not contend that this result should be reached under sections 161 and 162, Revenue Act of 1934, or that the four respective beneficiaries should pay the tax as upon income either distributed or currently distributable to them within the provisions of those sections.   Apparently conceding that such a theory is not applicable because the income was accumulated pursuant to a discretion of the trustee, petitioner contends either that the beneficiaries were the grantors and that under sections 166, 167, or 22 (a) the trust income was taxable to them in the proportion that each of them created the trust; or, in the alternative, that petitioner, instead of being a single trust, is four trusts each of which should have filed

a separate return, although they did not, and have paid a portion of the tax.

The first alternative urged refreshingly illustrates the impossibility of exhausting the novelty and variety of the law. That a taxpayer should invoke for his purposes the provisions of sections 166 and 167, safeguards created by Congress exclusively for the respondent's comfort, see e. g. report of (1924) Senate Finance Committee, 68th Cong., 1st sess., S. Rept. No. 398, p. 25; C. B. 1939-1 (Part 2), p. 283; or of section 22 (a) on a theory similarly applied judicially to protect the revenue, see *Helvering* v. *Clifford*, 309 U. S. 331, affords merely another illustration of the wisdom of such proverbs as refer to the "ill wind" or "one man's meat."

However, ingenious and arresting as may be the concept, we can not agree that petitioner has here discovered the instrument for its application. What the theory requires at least is identity between beneficiaries and grantors. But the beneficiaries at no time obtained, with respect to corpus or income, any vestige of that legal title which would have enabled them to act as grantors in the sense that they had freedom of choice to create the trust or withhold it.[1] What appears unmistakably is that the beneficiaries were as helpless to deal with their father's property, after the original trust was created, as they had been before; and that the transaction which took place in 1934, by which the father was enabled to accomplish alterations in the terms of the trust which were not permitted by any of its provisions, was merely an illustration of the extent to which a grantor can remain the true owner of property by the selection of sufficiently pliable recipients of the trust benefits. Cf. *Rollins* v. *Helvering*, 92 Fed. (2d) 390 (C. C. A., 8th Cir.); certiorari denied, 302 U. S. 763. The father, who created the original trust in 1923, was as clearly the grantor of the trust which arose in 1934 as if he had remained the legal and beneficial owner in the interval. Since no attempt is being made to tax to him the trust income on any comparable theory, the point involved in the *Rollins* case requires no further consideration. It merely renders sufficiently apparent the fallacy of any contention that the children ever became owners of such rights in the original trust that they can be regarded as grantors of the new one. Without deciding, then, whether petitioner could otherwise succeed in the effort to apply in its favor such authorities as *Helvering* v. *Clifford, supra*, and sections 166 and 167, cf. *Higgins* v. *Smith*, 308 U. S. 473, 477, we take the view that here the effort must fail because the premise that the beneficiaries were the grantors is untenable.

---

[1] One of the father's confidential advisers testified: "* * * I do know this: That Mr. MacManus would not have changed the beneficiary to John unless John had agreed to do as he stated in his declaration. * * *"

Petitioner contends, secondly, that it is not one trust but four. It claims—apparently conceding in this connection that the father was actually the grantor of the second trust—that his intention, the decisive test, was that the trust set up in 1934 should be quadruplex. We find no adequate support for petitioner's contention that the record discloses convincing evidence of an intent to establish more than one trust. "Whether at various places in the instruments the singular 'trust' is used or the plural 'trusts'" is a factor which may have little significance, as petitioner asserts in its reply brief. But it succeeds, as do other aspects of the relevant documents, in leaving the question of intent unanswered. If either father or son intended to create more than one trust they failed to give this intention adequate expression. What the father said was: "The details and mechanics of the matter I leave to you"; meaning the son who became the new trustee. What the evidence shows is that the son, assisted by the father's consultant, set up one trust and not four. The books of account were so constituted by the consultant. A single fiduciary tax return for "the estate or trust" was filed, signed by the son, and stated to be prepared from the books with the assistance of the consultant. And the allegations of the petition in this proceeding are in accord. There is no assertion that four trusts were created. It alleges, for example, that the declaration of trust "clearly states that the four beneficiaries are the owners of the corpus income or emoluments of *this trust*" [2] and "that the four beneficiaries individually included their share ($\frac{1}{4}$) of the profits in their personal income tax returns." Were we to accept petitioner's present contention it would necessitate the preliminary assumption that the father's confidential adviser and his son and fiduciary proceeded with the administration of the trust in a manner inconsistent with the purpose and intention of the original grantor; and this in spite of abundant opportunity to acquaint themselves with his true intent, since it appears that both had discussed the transaction in advance with the elder MacManus. We are not prepared, as we should be forced to on petitioner's premise, to infer that the son and the adviser were aware of the father's intention to erect four trusts and deliberately accomplished the reverse. On the contrary, we are satisfied that the evidence of practical construction, which is all we have to follow in the absence of an adequate showing of intent, would justify no conclusion other than that this was a single trust.

We find no error in respondent's treatment.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

[2] Emphasis added.