### ＧLOVER v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 10551.

Circuit Court of Appeals, Ninth Circuit.

June 26, 1944.

Rehearing Denied Aug. 2, 1944.

DENMAN, Circuit Judge, dissenting.

George G. Witter, of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Muriel Paul, and I. Henry Kutz, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding to review a decision of the United States Tax Court sustaining the assessment of a deficiency in petitioner's income tax for the year 1935. The question for consideration is whether a sum of money received by the taxpayer in that year was capital gain or whether it was ordinary income. The Court held it to be the latter.

The record does not contain the evidence. The facts as found by the Tax Court are these: In 1918 the taxpayer acquired 480 acres of land in Mono Basin having littoral rights on Mono Lake and riparian rights on Rush Creek. At the time of the acquisition of the land the value of the littoral rights was nil. Prior to 1930 the City of Los Angeles undertook an extensive project for the acquisition and use of the waters of Mono Basin. In some instances water rights were acquired by purchase, in others by condemnation. The city made a contract in 1933 with Nev-Cal Securities Company for the purchase of the land and water rights of the latter in Mono Basin, it being provided in the contract that $2,230,000 of the purchase price was to be held in escrow until the determination of awards for condemned properties. Such awards to the extent of $100,000 were to be paid by the city, and any excess over that sum by Nev-Cal.

On June 23, 1934, the city obtained a judgment condemning the water rights of the taxpayer and others, the taxpayer being awarded $68,000 as compensation for his riparian rights and $20,000 as compensation for his littoral rights. Taxpayer accepted the award for his riparian rights, but took an appeal from that part of the judgment awarding him $20,000 for littoral rights. On May 28, 1935, while the appeal was pending, the taxpayer "sold and assigned all his rights, title, and interest in the $20,000 award" to the Nev-Cal Company, stipulating and agreeing that the assignee might prosecute any appeal or other proceeding in its own name. The assignment was made "for and in consideration of the sum of twenty thousand dollars to him in hand paid by Nev-Cal." On the same date, and in form as a separate transaction, taxpayer received from Nev-Cal $41,000 "as consideration for the dismissal of appeal and waiver of right to appeal" by him. The taxpayer filed a dismissal of the appeal and also a release and discharge of the city from all liability growing out of the condemnation of his interest, "for and in consideration of the payment into court of the sum of $20,000 in satisfaction of judgment," together with certain costs, "and in consideration of the payment to [him] of an additional sum of $12,000" by the city.

The $20,000 received for the assignment of the award concededly represents proceeds from the involuntary disposition of a capital asset, namely, the littoral rights. Since these rights had been held by the taxpayer for more than ten years the amount received was taxable to the extent of 30% thereof only.[1] There is no dispute as to that. The dispute concerns the nature of the $41,000 received as consideration for the dismissal of and the waiver of the right to appeal. The taxpayer insists that this sum, also, was received as consideration for his littoral rights, hence represents capital gain with taxability limited as above.

The Tax Court determined the fact to be otherwise. It found that the $20,000 payment made in consideration of the assignment of the award was the compensation for littoral rights, whereas the $41,000 payment, separately made, was not received from the city, which acquired the rights, but was received from the Nev-Cal Company expressly as, consideration for the dismissal of the appeal. "The character of the $41,000 payment," said the Court, "appears in its declared purpose." It was received as consideration for the taxpayer's forbearance to exercise his legal right of appeal, hence was not capital gain but ordinary income. This characterization of the payment was thought by the Court to be one of substance. The prosecution of the appeal, it said, would have delayed settlement between the city and the Nev-Cal Company, since the amount of condemnation awards to others was to be a factor in determining the amount which Nev-Cal would receive from the city for its own property. Hence Nev-Cal had a substantial economic stake in the speedy termination of the litigation as well as in keeping down the amount of the awards.

The taxpayer argues that the Court disregarded substance for form, and in so doing construed as two transactions what in reality was only one, namely, an arrangement whereby he obtained $61,000 for his littoral rights. We do not agree that as a matter of law the two transactions must be thus consolidated. The question confronting the Tax Court was, at bottom, one of fact. The taxpayer and those with whom he dealt deliberately chose to cast their dealings in the forms employed. The Court, on the evidence

---

[1] Revenue Act of 1934, § 117(a), 26 U.S.C.A. Int.Rev.Acts, page 707.

before it, found that these forms accurately reflect the real substance of the arrangement. Naturally, in the absence of the evidence, we are in no position to inquire behind the finding. Perhaps the Court's decision may be said to embody a mixed determination of law and fact, but if so we are not able to identify in the decision any "clear-cut mistake of law" warranting a reversal, Dobson v. Commissioner, 320 U. S. 489, 502, 64 S.Ct. 239, 247, "The choice of disregarding a deliberately chosen arrangement for conducting business affairs does not lie with the creator of the plan." Gray v. Powell, 314 U.S. 402, 414, 62 S. Ct. 326, 334, 86 L.Ed. 301. The quoted principle is apposite in the tax field, Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406, more especially where, as here, the chosen form of the arrangement was rationally thought to square with the actualities.

■ If it be assumed that the right of appeal was itself a capital asset, the result is not different. The right came into existence upon the entry of the judgment in the condemnation proceeding. It was relinquished within a year thereafter. Under § 117(a) of the 1934 Act, the gain upon the sale or exchange of a capital asset is taxable in its entirety as income where the asset has been held for not more than a year.

Affirmed.

DENMAN, Circuit Judge.

I dissent. The majority opinion nowhere considers or even mentions that the taxpayer at all pertinent times reported his income on a cash basis. What he gave in consideration for the $41,000 was his "dismissal of appeal and [his] waiver of [his] right to appeal" from the award to him for the transfer by condemnation of his real property, admittedly a capital investment. That right to appeal was a property right but not cash. Hence, for one reporting on a cash basis, the acquisition of the right was not a taxing event under the revenue law.

The question then is, What was the consideration for the right to appeal? Obviously, it is the consideration paid for the capital investment in littoral rights in the condemnation of which his right of appeal arose. The taxing event as to the profit from the disposition of this capital investment is the receipt of the $41,000 for surrendering his right of appeal. Hence it should have been taxed at the rates for capital gains under § 117 of the Revenue Act of 1934.

There is nothing in the transferring document given for the $41,000 which in any way contradicts this. On the contrary, it shows the source of the surrendered right of appeal was the capital investment in the littoral rights appurtenant to the land. The effect of the majority decision as to this cash basis taxpayer is to treat the right to appeal as if it came out of thin air, was of no value, and hence there was nothing to deduct from the $41,000 in determining the gain—indeed, whether treating the gain as from ordinary income or from income in a capital transaction.

This situation is not affected by the fact that the right to appeal is one of several legal rights given him in consideration for the transfer of the littoral rights of the land in the condemnation proceeding. Under the majority opinion the following is apparently the law of this circuit: A race horse breeder, reporting on a cash basis, buys a stallion for $5,000; keeps him for five years, and then trades him for two thoroughbred colts. He later sells one colt to one purchaser for $6,000, and the other colt to a different purchaser for $8,000, giving bills of sales, in each of which there is a recital that the stallion was traded for the two colts. The two sales are at the same time. On the colt first sold there is a $1,000 taxable capital gain and on the other there is a taxable gain in ordinary income of $8,000! Or maybe, depending on which bill of sale is first delivered, a capital gain on one of $3,000 and the on the other a gain in ordinary income of $5,000!

The judgment should be reversed.