**Jesse JOHNSON and Virginia D. Johnson, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7116.**

United States Court of Appeals
Fourth Circuit.

Argued April 10, 1956.

Decided May 25, 1956.

David R. Shelton, Washington, D. C., for petitioners.

Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys, Dept. of Justice, Washington, D. C., on brief), for respondent.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and PAUL, District Judge.

PARKER, Chief Judge.

This is a petition to review a decision of the Tax Court of the United States affirming deficiency assessments of income taxes against petitioners, husband and wife, for the years 1947 and 1948, on the ground that certain deductions claimed as losses should not be allowed. The losses claimed were expenditures made by the husband, whom we shall refer to hereafter as the taxpayer, in constructing a building under contract for Frederick Courts, Inc., a corporation in which he was the sole common stockholder. The question presented by the appeal is whether the Tax Court was wrong in treating these expenditures as capital contributions which increased the basis of taxpayer's stock in the corporation, instead of as losses sustained by him under his construction contract with it. A similar question was presented to the Tax Court and decided against taxpayers in the decision under review in connection with expenditures made by the husband under a contract with Parkwood, Inc., another corporation in which he was the sole common stockholder. Taxpayers do not ask a review of that part of the decision relating to Parkwood, however, contending that the Parkwood expenditures are to be distinguished from the Frederick Courts expenditures on the basis of control exercised over Frederick Courts by the Federal Housing Administration as a preferred stockholder.

The facts were fully stated in the decision of the Tax Court and need not be repeated in detail here. See 24 T.C. 107. They may be briefly summarized as follows: Taxpayer is engaged in the construction business. In 1946 he and three other individuals organized Frederick Courts and transferred to it real estate worth $57,000. In May of the following year, he acquired all of the stock of the corporation and, in anticipation of applying for F. H. A. loan, amended its charter to provide for the issuance of preferred stock. Subsequently, preferred stock was issued to the F. H. A. which gave it certain rights of control over the affairs of the corporation for the protection of its interests with respect to the loans which it had guaranteed, and with right to take over complete control of its affairs in case of default.* Otherwise, complete control of the corporation's affairs was left in its officers and directors, who were selected by taxpayer, its sole common stockholder, from among his employees. No defaults have occurred which would authorize the preferred stockholders to take over control of the corporation and there has never been any effort on the part of F. H. A. to interfere with its control by its officers and directors.

Taxpayer entered into a contract with the corporation to construct for it an apartment building, the construction of which was being financed by loans guaranteed by the F. H. A. The original cost of construction under this contract was to be $1,163,640; but this was increased with the approval of F. H. A. to $1,313,640. Taxpayer's expenditures in constructing the building, however, amounted to $1,444,275.15, which was $130,635.15 in excess of the amount pro- vided by the amended contract. Part of this excess was attributable to bad weather, rising labor costs and inability to get materials during the construction period. The F. H. A. refused to sanction an increase in the value of the building which would have enabled the corporation to secure additional loans to reimburse the taxpayer for this excess, and the taxpayer did not attempt to have the corporation credit him with the excess among accounts receivable, to be paid if and when it had funds available for that purpose, as was done in the case of Parkwood. Taxpayer claimed the excess as an ordinary loss on his returns for 1947 and 1948. The Commissioner disallowed the deductions and the Tax Court affirmed his action, holding that the excess construction costs were capital contributions by taxpayer to the corporation in which he was the sole common stockholder. The basis of its decision is contained in the following portion of its opinion:

"The corporations were clearly his alter ego since their officers and directors, elected by him, were all individuals employed by him in his contracting business in various subordinate capacities. When he found that his costs were in excess of the contract price, he caused the corporations to increase the contract price. Frederick Courts, Inc., was able to obtain an additional loan of $102,100, and voted petitioner $100,000 of this immediately. Subsequently, petitioner was voted $50,000 by Frederick Courts, Inc., and $96,372.80 by Parkwood, Inc., such sums being payable 'when funds are available.' Had petitioner wished, he could undoubtedly have caused the corporations to establish addi-

---

* The amended corporate charter gave the holder of the preferred stock (F. H. A.) control over dividends, reserve fund for replacements, transfers, assignments or any action affecting the corporation's interest in its property, over terms of rental, physical alterations in the mortgaged premises, and changes in the corporate charter as well as over mergers, consolidations and liquidations, so long as the preferred stock remained outstanding, which would be as long as the mortgage indebtedness remained unpaid. The charter also provided for keeping of records by the corporation with right of inspection of records and property by the Federal Housing Commissioner and for vesting of complete control in F. H. A. in the even of default by the corporation in respect of any obligation assumed by it.

tional accounts payable for the remainder of his excess costs which are now before us. Having failed to do so, he must be regarded as having made additional contributions to the capital of each of the corporations, and the amount of the excess costs is to be added to his basis for the stock.

"Since the corporations were petitioner's alter ego and the transactions herein were not at arm's length, it is immaterial whether the excess costs were due to the use of more expensive materials than required by the specifications, rising labor costs, or bad weather conditions. We need not determine whether all such expenditures produced true economic benefits to the corporations. For, whatever their economic value, the excess expenditures over the amended contract prices were, on the facts of this case, capital contributions which increased the basis of petitioner's stock."

We think that the Tax Court was correct in its decision. If the taxpayer had been constructing the building for himself, no one, we think, would contend that the excess cost due to unexpected weather conditions, rising labor costs, etc., could be treated as loss rather than as investment of capital. By sec. 24(a) (2) of Title 26 of the Code it is expressly provided that "any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate" shall not be allowable as a deduction. And in Wadsworth Mfg. Co. v. Commissioner, 6 Cir., 44 F.2d 762, it was held that excess cost of construction to the owner of a building, due to a contractor's default, was to be treated as capital investment and not as loss. No different rule, we think, is to be applied where the excess expenditure is made by the sole common stockholder of the corporation in completing the building at a cost above the amount called for by the contract which he has with it. As said by the Tax Court, the corporation is his alter ego. Cf. Higgins

v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. In the case before us, taxpayer manifestly made the expenditures, not because as contractor he could be held to the terms of the contract, but because as sole common stockholder of the corporation it was to his interest and the corporation's interest that the building be completed. Because of conditions that had arisen, he was simply putting more into completing the building than originally contemplated; and this is manifestly not loss but capital investment. If the corporation had made the expenditure there would have been no question as to this. Wadsworth Mfg. Co. v. Commissioner, supra. We think it equally clear when the expenditure was made by the sole common stockholder.

We agree with the Tax Court that the holding of preferred stock by the F. H. A. and the right to take over and control the corporation in case of default does not affect the matter. There had been no default and the F. H. A. had not taken control. With respect to the minor limitations relating to rentals, keeping of records, inspection, etc., these were no more than safeguards of the mortgage indebtedness. They did not substantially interfere with the corporation's control of its activities, and furnish no basis for the contention that taxpayer in the performance of the construction contract was dealing at arm's length with the corporation. The expenditures involved were made by taxpayer just as they would have been made by him if there had been no right of control under any circumstances in F. H. A., i. e. for the completion of the building which would add to the value of his holdings of common stock. With respect to this matter the Tax Court said:

"In the instant case, petitioner argues that he lacked complete control over the corporations because of the rights and powers of the Federal Housing Administration as guarantor of the corporations' mortgages. However, after an examination of the various agreements entered into it is obvious that petitioner retained

complete control over the corporations' activities. The Federal Housing Administration held no stock in Parkwood, Inc., and, as to Frederick Courts, Inc., only if that corporation had defaulted on the payment of its mortgage would the Federal Housing Administration have been given control over its activities. The sole exception appears to be that the Federal Housing Administration had certain powers with respect to the disbursement of the guaranteed loans. This fails to support petitioner's argument, since he received almost the entire amount of such loans and his complaint is that there were not more of them."

There was no error and the decision of the Tax Court will be affirmed.

Affirmed.