John Calamaras and Despo Calamaras v. Commissioner. John Calamaras and Despo Calamaras v. Commissioner. Blue Sea Restaurant Corp. v. Commissioner.
Calamaras v. Comm'r
Docket Nos. 68147, 83134, 83135.
United States Tax Court
T.C. Memo 1960-201; 1960 Tax Ct. Memo LEXIS 90; 19 T.C.M. (CCH) 1045; T.C.M. (RIA) 60201; September 28, 1960
*90 Leonard Bailin, Esq. 130 West Forty-Second Street, New York, N. Y., for the petitioners. Jules W. Breslow, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax and additions to tax, as follows: John and Despo Calamaras
Additions to Tax
Additions to Tax, I.R.C. 1939
I.R.C. 1954
Sec.
Sec. 294
Sec.
Sec.
Sec.
Year
Deficiency
293(a)
(d)(1)(A)
294(d)(2)
6653(b)
6654
1953
$ 2,525.42
$126.27
$263.29
$175.53
1954
1,366.06
152.15
98.69
$ 683.03
1955
36,124.09
18,062.04
$11.67
Blue Sea Restaurant Corp.
Additions to Tax
I.R.C. 1939
I.R.C. 1954
Year
Deficiency
Sec. 293(b)
Sec. 6653(b)
1953
$16,731.74
$8,365.87
1954
11,785.86
$5,892.93
1955
3,197.29
1,598.65
*91 The issues are: 1. Was petitioner John Calamaras' salary from the Blue Sea Restaurant Corporation understated in the amount of $899.91 in the joint income tax return filed by him and his wife for the year 1953? 2. Did petitioners John and Despo Calamaras receive additional taxable income in the years 1953, 1954 and 1955 in the respective amounts of $2,826.88, $886.75 and $274.91 by virtue of payments made to others on their behalf by the Blue Sea Restaurant Corporation? 3. Was the income of petitioners John and Despo Calamaras from their individual proprietorships understated by $2,000 in the year 1953 by including in their cost of goods sold for that year amounts representing purchases of a prior year? 4. Are petitioners John and Despo Calamaras entitled to the dependency exemptions claimed for Despo Calamaras (mother of John Calamaras) in 1953, Anthony Mudrukas in 1954 and 1955, and George Calamaras for the year 1955? 5. Was the income of the Blue Moon restaurant understated by the amount of $3,000 in the returns filed by John and Despo Calamaras for each of the years 1953, 1954 and 1955 because of the inclusion in cost of goods sold of the cost of food consumed by the *92 petitioners and members of their family? 6. What is the proper amount of depreciation allowable for the Blue Moon Restaurant, and the Blue Sea Restaurant, for the taxable years, and for the Blue Sky Restaurant (Diner) for the year 1955? 7. Are the petitioners John and Despo Calamaras entitled to deduct as business expenses of the Blue Moon Restaurant real estate taxes and fuel expense allocable to their personal residence located in the same building which houses said restaurant? 8. Did petitioners John and Despo Calamaras overstate their interest expense in their return for the year 1955? 9. Did the Blue Sea Restaurant Corporation overstate the interest claimed as a deduction in its returns for the years 1953, 1954 and 1955? 10. Did the Blue Sea Restaurant Corporation overstate the amount it was entitled to deduct for taxes in its returns for the years 1953, 1954 and 1955? 11. Did the Blue Sea Restaurant Corporation understate its income in the amount of $1,000 for the year 1953 as a result of a mathematical error in its cash journal? 12. Were furniture and fixtures in the amount of $2,000 acquired by Blue Sea Restaurant Corporation in 1954 improperly deducted as a repair *93 expense? 13. Did Blue Sea Restaurant Corporation in its return for 1955 overstate the amount claimed as a deduction for legal expenses by $1,156.50? 14. Did Blue Sea Restaurant Corporation in its return for 1955 overstate the amount expended for supplies by $150.75 and the amount expended for advertising by $10? 15. Did the Blue Sea Restaurant Corporation overstate its purchases and expenses for the years 1953, 1954, and 1955, in the respective amounts of $5,500, $19,997.88 and $40? 16. Did Blue Sea Restaurant Corporation have unexplained bank deposits in the amounts of $21,880 and $32,751.49 in the years 1953 and 1954, respectively, and petitioners John and Despo Calamaras in the amount of $61,446.36 in the year 1955, which represented unreported income for those years? 17. Are petitioners John and Despo Calamaras liable for an addition to tax under Section 293(a) of the Internal Revenue Code of 1939 for the year 1953? 18. Are petitioners John and Despo Calamaras liable for the addition to tax under Section 294(d)(1)(A) of the Internal Revenue Code of 1939 for failure to file an estimated tax return for the years 1953 and 1954? 19. Are petitioners John and Despo Calamaras *94 liable for an addition to tax under Section 6654, Internal Revenue Code of 1954, for failure to pay estimated income taxes for 1955? Respondent concedes that petitioners are not liable for the additions to tax under Sections 293(b) and 294(d)(2), Internal Revenue Code of 1939, and under Section 6653(b), Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and, as stipulated, are incorporated herein by reference. Petitioners John Calamaras and Despo Calamaras, husband and wife, are residents of Woodside, New York. They filed joint income tax returns for the years 1953, 1954 and 1955 with the district director of internal revenue for the Brooklyn District of New York. John Calamaras will sometimes hereinafter be referred to as Calamaras. Petitioner Blue Sea Restaurant Corporation (hereinafter sometimes referred to as Blue Sea) owned and operated a restaurant at 129 Third Avenue, New York City, during the years 1953, 1954 and 1955. Prior to 1952 Blue Sea was operated by Calamaras as an individual proprietorship. It began doing business as a corporation on January 1, 1952. During the years 1953 *95 through 1955 Calamaras was its principal stockholder and was employed by it. It filed its income tax returns for those years with the district director of internal revenue for the Lower Manhattan District of New York. Its books and records were kept on the cash receipts and disbursements basis. During the years 1953 through 1955 Calamaras owned and operated as individual proprietorships the Blue Moon Restaurant (hereinafter referred to as Blue Moon), located at 5802 Laurel Hill Boulevard, Woodside, New York, and the Blue Sky stand located near the Hunters Point station of the Long Island Railroad. He employed a manager for the Blue Moon. In November 1955, Calamaras opened the Blue Sky Restaurant, a diner, which he operated as an individual proprietorship, at 2117 49th Avenue, Long Island City, New York. The Blue Sky Restaurant and the Blue Sky stand were located on the same property. In the joint returns filed by petitioners John and Despo Calamaras for the years 1953 and 1954 they did not separately list the income and expenses of the Blue Moon and the Blue Sky stand, but included the income and expenses of both, to the extent reported, in one schedule. In their return for 1955, *96 the income and expenses of the Blue Moon, to the extent reported, were included in one schedule, and the income and expenses of both the Blue Sky stand and the Blue Sky Restaurant, to the extent reported, were included in another schedule. Calamaras employed an accountant to maintain books of account and file tax returns. The accountant maintained a cash receipts and disbursements book and a general ledger for Blue Sea. He or one of his employees entered in the cash book of Blue Sea during the years 1953, 1954, and 1955 amounts which purportedly represented the total daily sales of its restaurant and bar, daily purchases and disbursements paid by cash and by check, and bank deposits. The sales figures and cash disbursement figures were taken about once a week by the accountant or one of his employees from a daily diary in which the entries were made by Calamaras. The accountant used the cash book and general ledger in preparing the returns of Blue Sea for the years 1953, 1954 and 1955. The accountant also kept a cash receipts and disbursements book and ledger for the Blue Moon. Entries in the cash book were taken from daily diaries kept by Paul Calamaras, the son of petitioners. *97 Most of the daily diaries of the Blue Sea and Blue Moon covered a period of one year, but some of them covered a period of two years. After the accountant or one of his assistants entered all the figures from the daily diaries into the books maintained by them, the diaries were either destroyed or lost. During the years 1953 through 1955 Calamaras, on behalf of himself and Blue Sea, borrowed substantial amounts of money from some individuals and from persons who were in the business of lending money. Any notes given to lenders were signed "Blue Sea Corporation, by John Calamaras, President." In some instances Calamaras gave the lenders post-dated checks in exchange for the money borrowed. Some of the borrowed money was used to repay prior borrowings, some to supply cash needed in the operation of Blue Sea and the businesses owned and operated by Calamaras as sole proprietorships, some to satisfy obligations incurred to persons who built the Blue Moon building and supplied its furniture and fixtures, and some to purchase assets. No record was kept showing whether the loans were made to Calamaras as an individual or to Blue Sea as a corporation. All of the borrowed money was not *98 deposited in Blue Sea's bank account. Calamaras did not keep any record of daily borrowings. He did keep a note book in which he listed at intervals ranging from three months to a year amounts purportedly owed to various lenders. In the return of the individual petitioners for 1953, they reported salary received by Calamaras during that year from Blue Sea amounted to $2,640. The books of Blue Sea indicate that it paid him $3,539.91 in 1953, and in its 1953 return it reported that this was the amount of his compensation. Respondent determined that petitioners received income of $899.91 not reported in their return. During the years 1953, 1954 and 1955 expenses of Blue Sea, Blue Moon, and the Blue Sky stand, and Calamaras' personal expenses were commingled, lumped together, and deducted primarily by Blue Sea. The amounts of $2,826.88, $886.75 and $274.91 for the years 1953, 1954 and 1955 were added by respondent to the income reported by the individual petitioners in their returns for those years because he determined that these amounts represented payments of personal expenses made by Blue Sea on their behalf. During each of the taxable years Blue Sea made payments on behalf of *99 the individual petitioners which represented their personal expenses. The amount deducted as cost of books sold in Schedule C of the 1953 return of the individual petitioners was $16,800. This amount represented the cost of goods sold by the Blue Moon Restaurant in that year as set forth in its books. In the notice of deficiency respondent disallowed $2,000 of this amount on the ground that it represented cost of goods sold in a prior year. In the returns of the individual petitioners dependency exemptions were claimed for Despo Calamaras, the mother of John Calamaras, for 1953; for Anthony Mudrukas, a nephew, for 1954 and 1955; and for George Calamaras, a nephew, for 1955, all of which were disallowed by respondent. The individual petitioners furnished more than one-half of the support of these persons during the years for which dependency exemptions were claimed. Respondent disallowed $3,000 of the amount claimed for purchases in the returns of the individual petitioners for each of the years 1953, 1954, and 1955 on the ground that this amount represented the cost of food consumed by the individual petitioners and members of their family at the Blue Moon Restaurant which was *100 improperly included in the cost of goods sold at that restaurant. John Calamaras worked long hours at the Blue Sea. His work day began at six or seven in the morning and ended at midnight or 1:00 a.m. He supervised the employees of the restaurant and the preparation of the food, and it was necessary that he be on the premises at all times. He ate his meals at the Blue Sea. During the year 1953, petitioner Despo Calamaras, her daughter Helen, and her son Paul ate their meals at the Blue Moon Restaurant. During 50 weeks of the year 1953, Despo Calamaras, the mother of John Calamaras, ate her meals at the Blue Moon. During the year 1954, Helen, Paul, petitioner Despo Calamaras, and Anthony Mudrukas ate their meals at the Blue Moon. During the year 1955 Paul, petitioner Despo Calamaras and Anthony Mudrukas ate their meals at the Blue Moon, and during 46 weeks of that year Helen ate her meals there. George Calamaras came to the United States in March 1955 and ate his meals at the Blue Moon during 43 weeks of that year. The cost of the food consumed by each of these persons was $6 per week. During the years 1953, 1954 and 1955 petitioner Despo Calamaras, and Helen and Paul performed *101 some services in the restaurants but received no compensation therefor. Helen went to Greece in the middle of November 1955 to get married. The Blue Moon Restaurant building was constructed in 1951. It contains a basement, a first floor, and a second floor. The basement and first floor were used during the taxable years for business purposes, and the second floor was used by the individual petitioners and members of their family for living quarters. The cost of the building was $40,530 and the cost of the furniture and fixtures of the restaurant was $18,582.46. The useful life of the building is 40 years and of the furniture and fixtures ten years. In the returns of the individual petitioners for each of the years 1953, 1954 and 1955, they claimed deductions for depreciation of the building in the amount of $1,198.22 and of the furniture and fixtures in the amount of $1,818.24. The deductions claimed for the building did not make any allowance for the fact that the second floor was used by the Calamaras family for living quarters. Respondent disallowed all of the deductions claimed for depreciation in determining the deficiencies for each of the taxable years. In the return of *102 the individual petitioners for the year 1955 a deduction was claimed for depreciation of the Blue Sky Restaurant building, diner, and furniture and fixtures in the total amount of $2,080. Respondent determined that the allowable depreciation was $1,255 and disallowed $825 of the depreciation claimed. In the returns of Blue Sea for the years 1953, 1954 and 1955 it claimed deductions for depreciation on furniture and fixtures in the respective amounts of $9,000, $8,000, and $10,543.90. Respondent determined that the claimed deductions were overstated in the amount of $4,196.69 for 1953, $1,365.34 for 1954, and $3,191.57 for 1955, and disallowed the deduction of these amounts. In Schedule C of the return of the individual petitioners for the year 1955, they reported the sales, purchases, and operating expenses of Blue Moon. Among the operating expenses listed in the schedule were $2,120.38 for gas, electricity, water and fuel and $1,003.84 for real estate taxes. Respondent determined that $300 of the fuel expense and $501.92 of the real estate taxes were applicable to their personal residence on the second floor of the Blue Moon building and were not deductible. In their 1955 return *103 the individual petitioners took the standard deduction and did not itemize their deductions on page 2 of the return. In Schedule C of the return of the individual petitioners for the year 1955 deductions were claimed for interest and bank charges of Blue Moon in the amount of $614.20 and of Blue Sky Restaurant in the amount of $3,081.27, or a total of $3,695.47. Respondent disallowed $3,003.47 of this amount for lack of substantiation. In the returns of Blue Sea for the years 1953, 1954 and 1955 deductions for interest and bank charges were claimed in the amounts of $2,021.67 for 1953, $1,126.80 for 1954, and $3,680.88 for 1955. Respondent disallowed $1,391.89 of the amount claimed for 1953, $241.51 of the amount claimed for 1954, and $274.91 of the amount claimed for 1955 on the ground that these amounts constituted interest paid on behalf of Calamaras and were not allowable as deductions by Blue Sea. In the returns of Blue Sea for the taxable years it claimed deductions for taxes in the amounts of $9,072.86 for 1953, $6,592.56 for 1954, and $12,762.22 for 1955. Included in the claimed deductions were social security and withholding taxes paid on behalf of its employees amounting *104 to $4,100.61 for 1953, $1,888.91 for 1954, and $3,757.92 for 1955. It was the practice of Blue Sea during those years to pay its employees net wages and absorb and pay the social security and withholding taxes. The cash book of Blue Sea discloses that during the month of February 1953 the sales of its restaurant amounted to $9,484.80 and the sales of its bar to $4,530.90. In adding these two amounts in its cash book an error of $1,000 was made as total sales for February were recorded as being $13,015.70 instead of $14,015.70. In determining the deficiency of Blue Sea for the year 1954 respondent determined that a furniture and fixture expenditure of $2,000 made by Blue Sea in 1954 was improperly deducted as a repair expense instead of being capitalized. In the return of Blue Sea for 1954 a deduction was taken for "Repairs and Maint." in the amount of $568.90. In the return of Blue Sea for the year 1955 a deduction was taken for legal and auditing expenses in the amount of $1,866.50. Of this amount $450 was paid for auditing expense. Respondent disallowed $1,156.50 of the deduction claimed for legal expenses for lack of substantiation. $1,366.50 was paid to lawyers, and $900 *105 thereof was expended for legal services performed on behalf of Blue Sea during the year 1955. Respondent determined that Blue Sea in its return for 1955 overstated the amount expended for supplies by $150.75 and the amount expended for advertising by $10. These amounts were disallowed for lack of substantiation. In Blue Sea's return for 1955, in computing its net profit for that year, it deducted $3,067.23 for supplies and $1,650.98 for advertising. Respondent disallowed $150.75 of the amount claimed for supplies and $10 of the amount claimed for advertising for lack of substantiation. The books of Blue Sea record an expenditure of $150.75 by check to Stefen Rogers for "supplies" and an expenditure of $10 by check to John Gavaris for advertising in January 1955. Respondent determined that the purchases and expenses of Blue Sea were overstated in its 1953, 1954 and 1955 returns in the amounts of $5,500, $19,997.88, and $40, respectively. At the end of the year 1953, petitioners' accountant made an entry in the general journal of Blue Sea debiting purchases and crediting accounts payable in the amount of $5,500. The effect of this entry was to increase purchases of $80,692.45 *106 shown in the cash book to $86,192.45. Prior to January 1, 1954, and until the latter part of January 1954 checks issued for purchases and other expenses were entered in the cash book in numerical order. Beginning in February 1954, because many checks were "bouncing," the accountant entered checks in the cash book only when they cleared the bank. In the deficiency notice for 1954 respondent stated that the amount of $19,997.88 disallowed represented the following: Excess of disbursements over receipts which were deducted as
purchases and expenses
$19,352.64
Personal expenses of John Calamaras claimed as deduction
645.24
$19,997.88 The cash disbursements of Blue Sea during 1954 per books were $262,128.28 and its cash receipts $242,775.64. Included in the cash disbursements was a substantial amount representing payments made by Blue Sea to persons from whom money had been borrowed. The amount claimed by Blue Sea in its 1954 return for purchases and expenses was $177,813.25. Because the books of Blue Sea indicated that there were more disbursements than receipts in the year 1953, the following journal entry was made by the accountant at the end of that year: *107 Dr. Cash on hand
$32,000.00
Cr. Notes Payable
$32,000.00
Respondent determined that Blue Sea had unexplained cash receipts for 1953 amounting to $21,880 and added this amount to the income reported in its return. Respondent's computation was as follows: General journal entry
$32,000.00
Plus: cash amount shown as exchanges in the cash
receipts
book
3,250.00
$35,250.00
Less loans verified: Busby Metals, Inc.
$4,870.00
John Busby
6,500.00
New Union Coat, Apron, & Linen Supply Co.
2,000.00
13,370.00
Unexplained cash receipts added to income
$21,880.00
The books of Blue Sea showed a loss for the year 1954. The accountant was satisfied that the business in fact operated at a profit, and since the books were so mixed up the accountant prepared the corporate income tax return for that year reporting a profit. Respondent determined that Blue Sea had unexplained cash receipts for 1954 in the amount of $32,751.49, and added this amount to the income reported in its return for that year. In the notice of deficiency sent to Blue Sea for the year 1954 the amount of the unexplained cash receipts was determined as follows: *108 Total cash receipts per cash
books
$242,775.64
Total sales reported per
178,179.15
return
$ 64,596.49
Less loans substantiated: Busby Metals
$ 2,445.00
Manufacturers Trust
Co.
29,400.00
31,845.00
Unexplained deposits added to
income
$ 32,751.49
Respondent determined that John and Despo Calamaras had "unexplained deposits" for 1955 in the amount of $61,466.36 and added this amount to the income reported on their joint return for that year. These unexplained deposits were determined as follows: Cash receipts per Blue Sea
journal
$396,113.11
Less: sales reported
276,195.81
$119,917.30
Plus: total deposits in personal account at the
Chemical Corn
Bank per bank statements (excluding July and
September
1955, which were missing)
69,936.00
$189,853.30
Total explained: Transferred from personal accounts to Blue Sea
$57,753.31
account
Loans verified *
70,633.63
128,386.94
Added to income
$ 61,466.36
*109 Opinion RAUM, Judge: The burden was generally upon petitioners to prove that the Commissioner erred in respect of the various issues presently in controversy. Except to the extent set forth below that burden has not been carried. Petitioners' evidence, on the whole, was confusing and unsatisfactory. It consisted primarily of the oral testimony of Calamaras and the accountant who kept the books of the various enterprises, as well as the books themselves and some other documentary materials. The diaries, which were books of original entry and which were crucial to the accuracy of the books in evidence, had been destroyed or lost. We thus had no opportunity to examine such books of original entry or to hear cross-examination based upon the contents thereof. And, in the light of other evidence before us, we had no confidence whatever in the books in evidence as an accurate reflection of income. There was evidence of improper commingling of items relating to different enterprises as well as the personal affairs of Calamaras. The accountant himself referred to the books as being "so mixed up" in connection with one of the years involved. Indeed, the books as to that year showed a loss; *110 yet the accountant was satisfied that a profit had been realized and artificially made certain arbitrary entries to show some profit for that year. There was considerable evidence of loose practices in the maintenance of the books. Neither Calamaras nor the accountant inspired any confidence in us. A notebook in which Calamaras kept some records as to his borrowings was so confusing as to be virtually worthless. In view of his language difficulties we have made every effort to appraise his evidence sympathetically, but we cannot substitute conjecture for proof, and to the extent that petitioners have failed to carry their burden the issues must be decided against them. [1]
1. The first issue involves respondent's determination that the salary income of Calamaras from Blue Sea was understated in the amount of $899.91 in the joint income tax return for the year 1953 filed by him and his wife. In that return he reported salary received from Blue Sea in that year *111 in the amount of $2,640. The general ledger of Blue Sea indicates that the salary paid by it to him during 1953 amounted to $3,539.91, and it deducted that amount in its return. In the absence of any convincing evidence that he did not receive that salary, respondent's determination that it was understated in the amount of $899.91 is approved. 2. The Commissioner determined that petitioners John and Despo Calamaras received additional taxable income in the years 1953, 1954 and 1955 in the respective amounts of $2,826.88, $866.75 and $274.91 by virtue of payments made to others on their behalf by Blue Sea during those years. The individual petitioners concede that on many occasions Blue Sea made payments on their behalf for items which represented their personal expenses. They contend, however, that these payments were part of a constant running account between them and Blue Sea; that the payments were merely loans which were eventually repaid; and that therefore such payments did not result in the receipt of taxable income by them. No convincing evidence was offered to support this contention. Moreover, payments made by Blue Sea on behalf of petitioners were claimed by it as business *112 expenses and were not treated as loans. The respondent correctly determined that petitioners realized income as a result of these payments, and in the absence of evidence that they were less than the amounts determined by respondent for each of the taxable years, his determination on this issue is sustained. 3. The Commissioner also determined that the business income reported on the joint return of the individual petitioners for the year 1953 should be increased by the amount of $2,000 on the ground that this amount represented the cost of goods applicable to a prior year. The amount deducted as cost of goods sold in Schedule C of the 1953 return of the individual petitioners was $16,800. This amount represented the cost of goods sold by the Blue Moon restaurant in that year as set forth in its books. The basis for respondent's determination that $2,000 of this amount was applicable to a prior year is not shown. After a careful consideration of the purchases shown in the books of Blue Moon for the year 1953, we think that the respondent erred in determining that the cost of goods sold as shown on its books included $2,000 applicable to a prior year. 4. The fourth issue is whether *113 the respondent erred in disallowing dependency exemptions claimed by petitioners John and Despo Calamaras for Despo Calamaras, the mother of John Calamaras, in 1953; for Anthony Mudrukas, a nephew, in 1954 and 1955; and for George Calamaras, a nephew, in 1955. The evidence convinces us that petitioners furnished more than one-half of the support of these persons during the years mentioned above, and we have made findings to this effect. Respondent erred, therefore, in disallowing the claimed dependency exemptions. 5. The individual petitioners contest respondent's determination that the income of Blue Moon was understated in the amount of $3,000 in the returns filed by the individual petitioners for each of the years 1953, 1954 and 1955. Respondent contends that this amount represented the cost of food consumed by them and members of their family at the Blue Moon in each of those years and that it was improperly included in the cost of goods sold at that restaurant. Petitioners John and Despo Calamaras urge that they and their son and daughter were all employed in the restaurants; that it was necessary for them to be there at all times in order to exercise proper supervision; that *114 they ate their meals at the restaurants for the convenience of the employer; and that the cost of the food consumed by them did not represent taxable income or a reduction of purchases. They concede that their dependents Despo Calamaras, the mother of John Calamaras, in 1953, Anthony Mudrukas, a nephew, in 1954 and 1955, and George Calamaras, a nephew, in 1955, ate their meals at the Blue Moon; and urge that the cost of food consumed by them was $5 or $6 per week. The evidence discloses that petitioner John Calamaras ate his meals at the Blue Sea. Inasmuch as the cost of food he consumed at that restaurant was not included in the purchases of food made by Blue Moon during the taxable years, no reduction in the amount of those purchases because of food consumed by Calamaras should be made. Although it appears that petitioner Despo Calamaras and her two children, Helen and Paul, did some work in the restaurants, they received no wages and were not employees. The convenience-of-the-employer rule often applied in determining whether the cost of food consumed by employees should be treated as income received by them does not therefore have any application. The question here is whether *115 the cost of food consumed by Calamaras' wife, children, and other dependents at the Blue Moon should be eliminated from the cost of goods sold reported for that restaurant. We think the obvious answer is that it should because the cost of food consumed by them does not represent cost of goods (food) sold. It represents nondeductible personal expense of petitioners and the respondent correctly determined that it should be eliminated from the cost of goods sold by the Blue Moon reported in the returns of petitioners for the taxable years. The evidence convinces us that the cost of food consumed by Calamaras' wife, his son and daughter, and other dependents did not amount to $3,000 in each of the taxable years as determined by respondent. We have found as a fact that the cost of the food consumed by each of them was $6 per week, and also have made findings showing the period each of them ate at the Blue Moon during the taxable years. The amount by which the cost of goods sold by Blue Moon, reported in petitioners' returns, should be reduced in each of the taxable years can be computed on the basis of these findings. 6. The sixth issue relates to the proper amount of depreciation allowable *116 for the Blue Moon Restaurant, and the Blue Sea Restaurant, for the years 1953, 1954 and 1955, and for the Blue Sky Restaurant (Diner) for the year 1955. Respondent disallowed the depreciation deductions claimed by petitioners John and Despo Calamaras for the Blue Moon building and the Blue Moon furniture and fixtures in their returns for the years 1953, 1954 and 1955. We are satisfied that the cost of the building was $40,530, that its useful life was 40 years, and that the cost of the furniture and fixtures was $18,582.46, and have made findings to this effect. Inasmuch as the second floor of the building was used for living quarters, and the basement and first floor for business purposes, the depreciation allowable on the building for each of the taxable years must be based on two-thirds of its cost. Depreciation deductions on the building based on this cost and a 40-year life, and on the furniture and fixtures based on a cost of $18,582.46 and a 10-year life are approved. In the returns of Blue Sea for the years 1953, 1954 and 1955 it claimed deductions for depreciation on furniture and fixtures in the respective amounts of $9,000, $8,000, and $10,543.90. Respondent determined *117 that the claimed deductions were overstated in the amounts of $4,196.69 for 1953, $1,365.34 for 1954, and $3,191.57 for 1955, and disallowed the deduction of these amounts. Petitioners have not sustained their burden of proving that respondent erred in his determination, and it is approved. In the return of John and Despo Calamaras for 1955 a deduction was claimed for depreciation on the Blue Sky Restaurant building, diner, and furniture and fixtures in the total amount of $2,080. Respondent determined that the allowable depreciation was $1,255 and disallowed $825 of the depreciation claimed. Petitioners have not sustained their burden of proving that respondent erred in his determination, and it is approved. 7. The Commissioner determined that $501.92 of the real estate taxes and $300 of the fuel expenses claimed in Schedule C of the return of petitioners John and Despo Calamaras for 1955 were allocable to their personal residence on the second floor of the Blue Moon building and were not deductible. In their 1955 return petitioners took the standard deduction and did not itemize their deductions. In Schedule C of their return they reported the sales, purchases, and operating *118 expenses of the Blue Moon. Among the operating expenses listed in the schedule were $2,120.38 for gas, electricity, water and fuel, and $1,003.84 for real estate taxes, a part of which was allocable to them personally because they and their family occupied the second floor as a residence. Petitioners have not shown that the portion of these expenses allocated by respondent to their personal residence was erroneous. The portion so allocated for fuel represented non-deductible personal expenses, and the portion allocated for real estate taxes represented taxes which would have been deductible on page 2 of the return had petitioners itemized their deductions. Having taken the standard deduction, they are not entitled to any deduction for taxes allocable to their personal residence. This issue is, therefore, decided for respondent. 8. In Schedule C of the 1955 return of the individual petitioners deductions were claimed for interest and bank charges of Blue Moon in the amount of $614.20 and of Blue Sky in the amount of $3,081.27, or a total of $3,695.47. [2] The Commissioner disallowed $3,003.47 of this amount for lack of substantiation. Petitioners' accountant testified that the interest *119 expense claimed in the 1955 return was based upon the books he and his assistants maintained and petitioners urge that it represents interest paid for money borrowed. The fact that the books maintained by the accountant may have reflected the payment of the interest claimed as a deduction does not convince us that it was in fact paid or that if paid, it represents interest attributable to the business of Blue Moon and Blue Sky. Evidence of loose practices in keeping the books, and of commingling of expenses of Blue Sea and the individually-owned businesses of Calamaras causes us to doubt the accuracy of those entries. In the absence of convincing evidence corroborating the fact that the interest in excess of that allowed by respondent was paid and that it represented interest on money borrowed by Calamaras for his individually-owned businesses, the respondent's disallowance of $3,003.47 of the interest claimed by the individual petitioners as a business expense in their 1955 return must be sustained. 9. The ninth issue involves the deduction for interest *120 claimed by Blue Sea in its returns for the years 1953, 1954 and 1955. In those returns Blue Sea claimed deductions for interest and bank charges in the amounts of $2,021.67 for 1953, $1,126.80 for 1954 and $3,680.88 for 1955. The respondent disallowed $1,391.89 of the amount claimed for 1953, $241.51 of the amount claimed for 1954, and $274.91 of the amount claimed for 1955 on the ground that these amounts were paid on behalf of Calamaras and were therefore not allowable deductions for Blue Sea. Petitioners' accountant testified that the amounts claimed for interest and bank charges on the returns of Blue Sea came from the cash book maintained for Blue Sea by him and his assistants; that the bank charges wer for checks which were "bouncing"; and that the remainder represented interest on money borrowed. When the accountant was asked how he knew whether the loans, upon which interest was paid, were being made to Calamaras as an individual or to Blue Sea as a corporation, he replied: "It was all the same, your Honor". In view of the apparent failure to distinguish between money borrowed for Blue Sea and money borrowed for Calamaras and his individually-owned businesses, we fail to see *121 how the accountant could make any accurate allocation of any interest paid between the corporation and the individually-owned businesses. In the circumstances we have no alternative but to hold that petitioners have not sustained their burden of proving that the respondent erred in disallowing part of the deductions claimed for interest in the returns of Blue Sea for the taxable years. [3]
10. The tenth issue relates to respondent's disallowance of taxes claimed as deductions in the returns of Blue Sea in the amounts of $4,780.02 for 1953, $9,570.67 for 1954, and $5,833.92 for 1955. The reason given by respondent in the deficiency notice for these disallowances was that they represented either amounts paid on behalf of Calamaras or amounts which were overstated or unsubstantiated. In the returns of Blue Sea it claimed deductions for taxes in the amounts of $9,072.86 for 1953, $6,592.56 for 1954, [4] and $12,762.22 for 1955. Petitioners urge that the amounts claimed as tax deductions in each year, *122 with the exception of those claimed for social security and withholding taxes, should be allowed because the books reflect the payment of such taxes. They also contend that the amounts claimed as deductions for social security and withholding taxes represented amounts which Blue Sea paid on behalf of its employees for such taxes pursuant to the custom of Blue Sea to pay such employees wages on a net basis and absorb and pay the social security and withholding taxes. The evidence convinces us that the latter contention has merit and we hold that Blue Sea is entitled to deductions for social security and withholding taxes paid on behalf of its employees in the amounts of $4,100.61 for 1953, $1,888.91 for 1954, and $3,757.92 for 1955 as business expenses, and not as taxes paid. See I.T. 3154, 1938-1 Cum. Bull. 113. We are not convinced that Blue Sea is entitled to deductions for taxes of all of the remainder of the amounts deducted in its returns for each of the taxable years and that some portion of such taxes did not constitute taxes paid on behalf of Calamaras or his individually-owned businesses. Taking into account the fact that the taxpayer has failed to produce convincing *123 evidence that all of the taxes claimed as deductions were its taxes, and doing the best we can with the evidence before us, see Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2), we hold that taxes claimed by Blue Sea in the amounts of $500 for 1953, $200 for 1954, and $2,000 for 1955 are not allowable deductions in computing its net income for those years. 11. The Commissioner determined that the sales income reported in the return of Blue Sea for the year 1953 was understated in the amount of $1,000 as the result of an error in addition in its cash journal. An examination of the cash journal discloses that Blue Sea had sales of $9,484.80 in its restaurant and of $4,530.90 in its bar during the month of February 1953. In adding these two amounts in the cash journal an error of $1,000 was made as total sales for February were recorded as being $13,015.70, when the correct total was $14,015.70. This issue is therefore decided for the respondent. *124 12. The twelfth issue relates to respondent's determination that a furniture and fixture expenditure of $2,000 made by Blue Sea in 1954 was improperly deducted as a repair expense instead of being capitalized. In the return of Blue Sea for 1954 a deduction was taken for "Repairs & Maint." in the amount of $568.90. The accountant testified that at the time he prepared the 1954 return expenditures shown on the books for repairs and maintenance were capitalized and this may account for the fact that the amount claimed on the return as a deduction for repairs was only $568.90. The respondent's disallowance of a deduction for repairs in the amount of $2,000, which amount is in excess of the amount deducted in the return for repairs, appears to be erroneous and this issue is decided for the petitioners. 13. The thirteenth issue involves the respondent's disallowance of part of a deduction for legal expenses claimed in the return of Blue Sea for 1955. The amount claimed in the return for legal and auditing expenses was $1,866.50, and the amount of legal expenses disallowed by the respondent was $1,156.50. Although the books of Blue Sea indicate that payments for legal and auditing expenses *125 were made by check, no cancelled checks were introduced in evidence. The evidence persuades us, however, that during the year 1955 Blue Sea paid $1,366.50 to lawyers and $450 for auditing expense. The evidence does not disclose the nature of the services performed by the lawyers and the extent to which they were performed on behalf of Blue Sea and on behalf of Calamaras and his individually-owned businesses. There is evidence indicating that one of the lawyers performed services for both Blue Sea and the individually-owned businesses of Calamaras and that $153 paid to one lawyer was not for legal services. We are convinced that a substantial portion of the legal services was performed for Blue Sea, and, doing the best we can with the unsatisfactory evidence presented, Cohan v. Commissioner, supra, we hold that Blue Sea is entitled to a deduction in 1955 of $900 for legal expense and $450 for auditing expense. 14. The Commissioner determined that Blue Sea in its return for 1955 overstated the amount expended for supplies by $150.75 and the amount expended for advertising by $10. These amounts were disallowed by respondent on the ground that they were unsubstantiated. *126 In its return for 1955, in computing its net profit for that year, Blue Sea deducted $3,067.23 for supplies and $1,650.98 for advertising. Petitioners urge that these are the amounts which the books of Blue Sea show were expended for supplies and advertising and that the deductions claimed should therefore be allowed books of Blue Sea also record an exture of $150.75 by check to Stefen Rogers for "supplies" in January 1955. The check was not introduced and there is no evidence to substantiate petitioners' claim that this expenditure was made for supplies. The The books of Blue Sea record an expendipenditure of $10 by check to John Gavaris for advertising in January 1955. The check was not introduced and there is no evidence to substantiate petitioners' claim that this expenditure was for advertising. In the circumstances the respondent's disallowance of deductions claimed for both of these items must be sustained. 15. The fifteenth issue involves respondent's determination that the purchases and expenses of Blue Sea were overstated in its 1953, 1954 and 1955 returns in the respective amounts of $5,500, $19,997.88, and $40. The cash book of Blue Sea for the year 1953 shows total *127 purchases by cash and by check of $80,692.45. At the end of that year its accountant made an entry debiting purchases and crediting accounts payable in the amount of $5,500, the effect of which was to increase purchases for that year from $80,692.45 shown in the cash book to $86,192.45. The testimony of the accountant with respect to this entry is not clear. As we understand it he made this entry because many checks issued by Blue Sea were "bouncing" and he decided to enter the amount of any check issued in the bank column of the cash book only when it cleared the bank. An examination of the cash book discloses that during 1953 and January of 1954 checks issued for purchases and other expenses were entered in the cash book in numerical order. The amount claimed for purchases in the 1953 return of Blue Sea included the amounts listed in the cash book for checks issued for purchases and the additional amount of $5,500 which purportedly represented checks issued and outstanding as of December 31, 1953, which had not cleared the bank. The books of Blue Sea were kept on the cash receipts and disbursements basis. Even if it be assumed that an accrual could properly be made by a cash basis *128 taxpayer to cover checks which had been issued for purchases which might not be honored by the bank because of a low cash balance in its bank account, there is no convincing evidence that Blue Sea had checks issued and outstanding as of December 31, 1953, not recorded in its cash book, in the amount of $5,500, or that the practice of not entering checks until they cleared the bank was followed at the end of 1953. In the circumstances, our conclusion is, and we hold, that petitioner has not proved that respondent erred in disallowing the deduction claimed for this amount in the 1953 return of Blue Sea. In determining the deficiency for 1954, the respondent disallowed $19,997.88 of the amounts claimed in the return of Blue Sea for that year for purchases and expenses. In the notice of deficiency respondent stated that the amount disallowed represented the following: Excess of disbursements over receipts which were deducted as
$19,352.64
purchases and expenses
Personal expenses of John Calamaras claimed as deduction
645.24
$19,997.88 According to the books of Blue Sea during 1954 its cash disbursements of $262,128.28 exceeded its cash receipts of $242,775.64 by *129 $19,352.64. Included in the cash disbursements was a substantial amount representing payments made by Blue Sea to persons from whom money had been borrowed. The amount claimed in Blue Sea's return for 1954 for purchases and expenses was $177,813.25. Inasmuch as it did not deduct the amount of its total disbursements per books as purchases and expenses, we fail to see any sound basis for respondent's determination that the amount by which those disbursements exceeded total receipts represented an amount deducted by Blue Sea as purchases or expenses which should be disallowed. It is quite possible that this excess represented part of the amounts, expended by Blue Sea to satisfy its note liabilities, for which no deduction was claimed. We hold that respondent erred in disallowing the amount of $19,997.88 as a deduction. Respondent's disallowance of the amount of $645.24 as a 1954 deduction and $40 as a 1955 deduction is approved. The evidence discloses that expenditures were made by Blue Sea to pay personal expenses of Calamaras. Petitioners have not sustained their burden of proving that such payments did not amount to $645.24 in 1954 and $40 in 1955. 16. The sixteenth issue involves *130 respondent's determination that Blue Sea had unexplained cash receipts in the amounts of $21,880 for 1953 and $32,751.49 for 1954, and that petitioners John and Despo Calamaras had unexplained deposits in the amount of $61,446.36 for 1955, which represented unreported income for those years. In determining the amounts of these unexplained cash receipts and deposits respondent gave petitioners credit for borrowed money in the amounts of $13,370 for 1953, $31,845 for 1954 and $70,633.63 for 1955. Petitioners' evidence does satisfy us that large amounts of money were borrowed by Calamaras on behalf of Blue Sea and his individually-owned businesses during the taxable years. However, there is no convincing evidence that those amounts exceeded the amounts allowed by respondent in determining the deficiencies. Apparently realizing that their proof was deficient in this respect petitioners on brief attack the method chosen by the respondent in his determination of their unreported income. They argue that any computation of unreported income based on unexplained receipts or deposits must of necessity be inaccurate where loans were constantly being made in varying and large amounts, that only *131 increases in net worth would indicate whether they had any unreported income, and that respondent should have used the net worth method. We do not agree. Although he might have employed the net worth method, it was not obligatory that he do so. And in any event, difficulties in assembling the necessary data may have rendered the use of the net worth system impossible here. The evidence discloses loose practices in keeping the books of Blue Sea and the individually-owned businesses of Calamaras, destruction or loss (not shown to be without negligence) of books of original entry, and a commingling of expenses of Blue Sea with those of the individually-owned businesses. In these circumstances, the accuracy of the books as clearly reflecting income is suspect and the respondent has the right to compute a taxpayer's income by any method which, in his opinion, will clearly reflect income. The method employed by him must, however, be reasonable and the "burden to adopt a method that will clearly reflect the income is on the Commissioner equally as well as on the taxpayer". Bradstreet Co. v. Commissioner, 65 F.2d 943, 945 (C.A. 1); H. T. Rainwater, 23 T.C. 450, 456. *132 The books of Blue Sea for the years 1953 and 1954 indicated that that corporation had certain cash receipts which were not included in its reported taxable income. Respondent determined that a portion of such receipts was due to borrowings which he was able to verify, and that the remainder represented unreported taxable income. We fail to see how this method of determining unreported income is of necessity inaccurate, or that the burden placed on petitioners of proving that the determination was erroneous is in any sense unreasonable. Petitioners have only themselves to blame if their records do not permit them to sustain that burden, and, inasmuch as they did not do so, the respondent's determination that Blue Sea had unexplained cash receipts, representing income, in the amounts of $21,880 for 1953 and $32,751.49 for 1954 is sustained. For the year 1955 respondent determined that the individual petitioners had "Unexplained deposits" of $61,466.36. The computation by which he arrived at this amount is set forth in the last paragraph of our findings. He first attributed to the individual petitioners a gross amount of $189,853.30 for the year 1955 by adding to the deposits of $69,936, *133 made by them during that year in their personal account, the amount of $119,917.30 which represented the excess of the cash receipts shown in Blue Sea's journal over the sales reported in its 1955 return. Then, from the foregoing gross amount of $189,853.30 he subtracted $128,386.94 (being the sum of (a), $57,753.31 transferred from the personal account to Blue Sea account plus (b), $70,633.63 representing "loans verified"), and thus arrived at $61,466.36 as "unexplained deposits" of the individual petitioners. We perceive no legally correct basis upon which the respondent's allocation of the unexplained receipts of Blue Sea to the individual petitioners and the treatment of those receipts as deposits of the latter can be sustained. Such receipts were properly attributable to Blue Sea, and the respondent's attempt to charge them to the individual petitioners appears to be erroneous on its face. In his brief he urges in another connection that the corporation must be recognized as a separate and distinct entity, that it is not the same as its controlling stockholder, and that this Court should not condone the commingling of the various businesses. Indeed, we have sustained him on *134 that contention in reference to other issues herein. Yet it seems to us that when, in connection with the present issue, he blends unreported receipts of Blue Sea with deposits of the individual petitioners, he is doing precisely what he successfully urged us to condemn elsewhere. Of course the Government may, in appropriate cases, disregard the corporate fiction (cf. Higgins v. Smith, 308 U.S. 473, 477), but we know of no situation where it may have it both ways in the same case. The Commissioner's computation is not a computation of "Unexplained deposits" of the individual petitioners, but is a computation of the unexplained receipts and deposits of both Blue Sea and the individual petitioners. On the record before us we think that the respondent's method of computing unexplained deposits of the individual petitioners was arbitrary and does not reflect income which they failed to report. [5] We, therefore, hold the respondent erred in adding $61,466.36 to the income reported in their 1955 return. *135 17. The seventeenth issue relates to respondent's determination that part of the deficiency for the year 1953, in the case of John and Despo Calamaras, was due to negligence or intentional disregard of rules and regulations, and that they are therefore liable for the addition to tax provided in Section 293(a), Internal Revenue Code of 1939. Inasmuch as some of the issues in the case of these petitioners for the year 1953 have been decided in their favor and the respondent in determining the deficiency for that year allowed them as business deductions $1,100.55 for interest and $945.68 for taxes not claimed in their return, we doubt that there will be any deficiency for 1953 and therefore no addition to tax under Section 293(a) could be imposed. If, however, our decision of the issues should result in some small deficiency then our conclusion is, and we hold, that no part of the deficiency is due to negligence or intentional disregard of rules and regulations for we are convinced by the evidence that such a deficiency was due in part to an unintentional error in reporting salary and in part to the fact that Calamaras, an uneducated man, did not realize that payments made in his behalf *136 by Blue Sea, his wholly-owned corporation, constituted income which should have been reported in his return and that food consumed by members of his family at the Blue Moon was not properly includible in the cost of goods sold by that restaurant. 18. The remaining issues relate to respondent's determinations that petitioners John and Despo Calamaras are liable for an addition to tax under Section 294(d)(1)(A), Internal Revenue Code of 1939, for failure to file estimated tax returns for the years 1953 and 1954, and for an addition to tax under Section 6654, Internal Revenue Code of 1954, for failure to pay estimated income taxes for the year 1955. Petitioners have produced no evidence showing that respondent erred in making these determinations, and they must, therefore, be approved, as recomputed to take into account our decision with respect to the other issues herein. Decisions will be entered under Rule 50. Footnotes
*. ↩
Vassilaros
$ 2,000.00
Atlantic Bank
3,000.00
Miller Bakeries
7,000.00
Jimmy Therakis
2,000.00
Milton
2,500.00
Metalyne Trading Co.
10,000.00
Apollo Pastry
1,000.00
Delaware Farms
5,100.00
New Union
4,000.00
National Vending
5,000.00
Manufacturers Trust Co.
23,033.63
Thomas Kourtis
6,000.00
$70,633.63
1. Of course, to the extent that the Commissioner's determination itself may be found to be arbitrary (as will be developed as to one item in the sixteenth issue, infra), no such burden of proof attached to petitioners.↩
2. In the return of Blue Sea for the year 1955 a deduction was claimed for interest and bank charges in the amount of $3,680.88.↩
3. In determining the deficiency against John and Despo Calamaras for the year 1953 respondent allowed a deduction for interest not claimed in their return in the amount of $1,100.55.↩
4. The respondent's disallowance of taxes in the amount of $9,570.67 for the year 1954 appears to be clearly erroneous inasmuch as the total amount claimed by Blue Sea for that year as a deduction for taxes was only $6,592.56.↩
5. There is no illuminating explanation of the Commissioner's computation either in the evidence or on brief. Conceivably, an explanation could be made that would clarify the computation in the Commissioner's favor and make it seem very simple as a matter of hindsight. But since we are without the benefit of such hindsight, we cannot approve a determination of unreported income that appears to be erroneous; and if there is some presently unperceived justification for that computation we express our disapproval of the Government's method of procedure that leaves such possible justification surrounded by fog.↩