Einer NIELSEN and Mildred C. Nielsen, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2811.

United States District Court
M. D. Tennessee,
Nashville Division.

Nov. 26, 1962.

William Waller, Waller, Davis & Lansden, Nashville, Tenn., for plaintiff.

Kenneth Harwell, U. S. Atty., Nashville, Tenn., Herbert S. Kendrick, Atty., Civil Division, Dept. of Justice, Washington, D. C., for defendant.

GRAY, District Judge.

This action was brought by plaintiffs under the provisions of Title 28, Section 1346(a) (1), U.S.C.A., for the recovery of income taxes paid by them for the calendar year 1957. In that year, plaintiff Einer Nielsen was a partner in J. C. Bradford & Company (hereinafter called Bradford), a securities dealer in Nashville. Bradford filed a partnership return for the year reporting long-term capital gains derived from the purchase and sale of certain shares of stock in Knights Life Insurance Company and Phillips & Buttorff Corporation. Subsequently, the Internal Revenue Service adjusted the partnership's income by treating these profit items as ordinary income; further, it adjusted the partnership's income by disallowing a total of $15,000.00 paid by Bradford to Woodstock Corporation for its services in connection with these transactions. These adjustments in the partnership's income resulted in a deficiency assessment against these plaintiffs, which assessment was paid. They filed a timely claim for refund, which claim was disallowed and this action followed.

In each of the transactions, Bradford used Woodstock Corporation as a financing vehicle and paid it fees aggregating $15,000.00 for its services. Woodstock Corporation is a wholly-owned subsidiary of The 418 Union Street Corporation, the stock of which is owned by some of the partners in Bradford, but not all, and by the wife of one of the partners. Woodstock had been used on at least one previous occasion as a financing vehicle for the purchase of a block of stock by Bradford, its use on that occasion and on the instant occasions being an attempt to avoid violation of the capital requirements of the New York Stock Exchange, of which Bradford was and is a member.

In each of the transactions, Woodstock signed notes for money borrowed and delivered the proceeds to Bradford. The government in its trial brief and preliminary statement raised the question that interest payments made by Bradford on these loans were not properly deductible by Bradford although no adjustment on this basis had theretofore been made by the Commissioner. However, in its proposed findings of fact and conclusions of law filed herein subsequent to the completion of the transcript of the evidence, no mention was made of this question and it is therefore considered to have been abandoned.

The primary question involved then is whether or not Bradford, a dealer in securities, complied with the pertinent provisions of Section 1236 of the Internal Revenue Code of 1954 so as to be entitled to consider the gain in these transactions

as gain from the sale or exchange of capital assets. These provisions are:

"§ 1236. Dealers in securities

"(a) Capital gains.—Gain by a dealer in securities from the sale or exchange of any security shall in no event be considered as gain from the sale or exchange of a capital asset unless—

"(1) the security was, before the expiration of the 30th day after the date of its acquisition, clearly identified in the dealer's records as a security held for investment or if acquired before October 20, 1951, was so identified before November 20, 1951; and

"(2) the security was not, at any time after the expiration of such 30th day, held by such dealer primarily for sale to customers in the ordinary course of his trade or business."

▇ The first of these requirements is merely clerical in nature and Bradford complied therewith in each of the transactions. The fulfillment of the second requirement is a matter of fact to be determined by the court. Factor v. C. I. R., 281 F.2d 100 (9th Cir., 1960).

▇ In general, the definition of a capital asset must be narrowly applied since the provisions with reference to gain from the sale or exchange thereof constitute exceptions from the normal tax requirements of the Internal Revenue Code. Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29.

▇ Various superficial complexities appear in each of these transactions but they must be ignored since it is the substance of the matter which must be determined and not merely its ostensible nature. Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406.

Applying this principle and looking behind the facade erected by the legalistic architecture employed in each of these transactions, the basic features of which vary widely, I find:

## KNIGHTS LIFE TRANSACTION

In January, 1957, Bradford received an order, which had been solicited by it, from American General Insurance Company for up to 75,000 shares of the capital stock of Knights Life Insurance Company at a price of $67.50 per share, the sale to be closed between August 1, 1957, and October 31, 1957, as designated by Bradford. The order bound the purchaser to purchase all shares acquired by Bradford, within the stated limit, if Bradford acquired at least 55,000 shares and Bradford agreed before March 31, 1957, if it acquired at least 55,000 shares, to acquire such additional shares as might be necessary to make up 57,500 shares. Under the agreement, it would terminate on January 31, 1957, unless prior to that time Bradford had acquired, and notified the purchaser, at least 55,000 shares of stock.

Bradford did acquire immediately something more than 55,000 shares and subsequently made additional purchases to comply with the 57,500-share requirement.

The purchase was financed by a loan to Woodstock, secured by the stock, the commitment of the purchaser, and the purchaser's own guarantee of the payment of the loan. It was so held until the delivery date, which was, with reference to most of the stock, more than six (6) months after its acquisition.

▇ I find that from and after the acquisition of the stock by Bradford it was held by Bradford solely for sale to the customer who had ordered it and that this was a sale to a customer in the ordinary course of business.

▇ Accordingly, the Commissioner was correct in determining that the profit realized was ordinary income and not a gain from the sale or exchange of a capital asset.

▇ In this transaction, Bradford paid a $5,000.00 fee to Woodstock Corporation for serving as financing vehicle. Although there is some similarity of ownership of Woodstock Corporation and J.

C. Bradford & Company, the ownership is not the same. There was nothing improper in the payment; it constituted income to Woodstock and was properly chargeable by Bradford as a part of the expense of handling this transaction. The Commissioner was in error in disallowing it.

I have considered the fact that the possibility of the availability of Knights Life stock was learned of by J. C. Bradford and one Raymond T. Smith, of Chicago. Smith participated in the negotiations, was considered an equal partner, and received one-half of the net profits. This participation does not affect the essence of the matter, as hereinbefore found.

### PHILLIPS & BUTTORFF TRANSACTION

In 1956, J. C. Bradford, partner in J. C. Bradford & Company, learned of the possible availability of a large block of stock of the Phillips & Buttorff Corporation. At Bradford's solicitation, Guy L. Comer of Nashville directed Bradford to begin acquiring stock in this corporation for his account. Bradford did acquire 75,721 shares, of which 55,000 were delivered and paid for.

Guy L. Comer was President and a Trustee of Church of Christ Foundation, a charitable foundation, which had substantial investments, either in its own name or in the name of a wholly-owned subsidiary corporation. Herein, for the sake of clarity, the word Comer is used when reference is either to him, the Foundation or its subsidiary.

Not having received delivery instructions or payment for 20,721 shares bought, Bradford discussed the matter with Comer, learned that the purchases had been for the Foundation and that Comer was contemplating the sale to Phillips & Buttorff of the stock of another company owned by the Foundation, if proper arrangements could be made.

Alert to the possibility of a long-term capital gain, and properly so, Bradford proposed a plan for handling the transaction. Negotiations followed, an agreement was reached, contracts and options were drafted and signed, the options were exercised and sales made in accordance therewith.

In essence, Bradford repurchased the 55,000 shares which had been delivered and paid for, gave Comer an option to purchase the total of 75,721 shares, Comer gave Phillips & Buttorff an option to purchase the stock in the other company, above-mentioned, and Woodstock served as financing vehicle, posting as collateral for the loans the Phillips & Buttorff stock owned by Bradford and stock loaned to it by Comer.

I find that after its repurchase of the 55,000 shares from Comer, under the agreements, Bradford held as principal, not as agent, all of the 75,721 shares of Phillips & Buttorff, that it held same thereafter for possible delivery under the terms of the option, that this was not a holding primarily for sale to a customer in the ordinary course of its trade or business.

Accordingly, the Commissioner was in error in determining that the profit realized was ordinary income and not a gain from the sale or exchange of a capital asset.

I have considered the fact that Bradford's repurchase of the 55,000 shares which it had delivered was at its cost, that it did not collect from Comer a commission for its services in the purchase of this block and the additional 20,721 shares. Many taxpayers are willing to forego immediate and certain short-term gains in the hope or expectation of long-term gains with their resultant tax advantages. This is not improper. I do not find it so in the instant situation.

For the reasons set forth in the discussion of the Knights Life transaction, I find that the Commissioner was in error in disallowing the fee of $10,000.00 paid by Bradford to Woodstock for its services.

Order in accordance with this opinion will be submitted by counsel within fifteen (15) days.